(Decided July 15th, 1859.)

---

# Benjamin Miller and Daniel Kauffman *vs.* James E. Barroll.

Evidence that the plaintiffs had painted several other houses for K, and, in each instance had done all the painting on them, does not tend to show that they had done the work on the house, on which they claimed a lien, in pursuance of a contract with K, to do all the painting on that house, or to do all the painting on all the houses built by K, and is inadmissible for such purpose.

Evidence, that about the time the house in question, and the adjoining one, which K was also building, were commenced, K said to one of the plain-

tiffs, he wanted them to prime the frames for and see about painting these houses, is competent to go to the jury, as tending to show that the painting, done by the plaintiffs, was done under a contract with K, to do all the painting for the house in question.

The *sale* of a house and lot, whilst the house was in process of erection and unfinished, cannot alter or affect the rights of mechanics, under our mechanics' lien laws, who were then engaged in doing, and continued afterwards to do work, under a *previous employment* by the *vendor* when *owner*.

Where there is work done and materials furnished, *continuously* under *one* contract or employment, made by the vendor of the house and lot, whilst *owner* thereof, the mechanics can recover for the *whole*, without giving the *purchaser* the notice required by the Act of 1845, ch. 176, sec. 1.

The Constitution confers on the court of Common Pleas original jurisdiction, only "in *suits* where the *debt* or damage claimed shall be over one hundred dollars and shall not exceed five hundred dollars." HELD:

That this language does not embrace a proceeding to enforce a mechanic's lien, which is not a *suit* for debt or damage, but a proceeding *in rem.* by *scire facias*, and that court therefore has no jurisdiction in such cases.

APPEAL from the Court of Common Pleas.

This is a *mechanics lien* case. The claim filed by the appellants was for painting and glazing done by them upon a house. The proceedings prior to the trial are fully stated in the opinion of this court.

*1st Exception.* The plaintiffs having proved that they did the whole painting on the house in question, and that it, and the lot on which it was erected, at the time the house was commenced belonged to Kridler, and that it was built under the superintendence of Kridler's foreman, then offered to prove that the plaintiffs had painted several other houses, in 1853 and 1854, for Kridler, and in each instance had done the whole painting on such houses. This evidence was offered for the purpose of allowing the jury to infer from it in connection with the evidence in the cause, that the plaintiffs had done the work on the house in question in pursuance of a contract with Kridler, or generally, that they had contracted to do all the painting for houses built by Kridler in 1853 and 1854. The defendant objected to the admissibility of this evidence, which objection the court (MARSHALL, J.) sustained, and to this ruling the plaintiffs excepted.

*2nd Exception.* The plaintiffs then offered to prove that, just about the time the house in question and the adjoining one which Kridler was also building, were being commenced, Kridler said to one of the plaintiffs that he wanted them to prime the frames for said houses and see about painting these houses. This evidence was offered as tending, in connection with the other evidence in the cause, to prove that the painting done by the plaintiffs was done under a contract with Kridler to do all the painting for the house in question. To the admissibility of this evidence the defendant objected, which objection the court sustained, and to this ruling the plaintiffs excepted.

*3rd Exception.* The plaintiffs proved that they were partners and did the work, and furnished the materials, set forth in their claim of lien, for the building therein mentioned; that the building was commenced in the summer of 1853, and at that time Kridler was the owner of the lot on which it was erected. They further proved by Houck, that the plaintiffs commenced painting on the frames of the windows for this house about the time, or shortly after its commencement, and that they did all the painting on it, and that the last painting was done in July 1854. On cross-examination this witness testified that the house was finished in the spring of 1854; that Mr. Barroll had another building added, and an observatory on top, and an office made in the basement; the alterations were made by Kridler; the same hands did the extra work that did the original work; witness was foreman for Kridler and superintended the building and also the extra work; the plaintiffs did the painting on the new work; they commenced painting in July 1853 and finished in July 1854; witness knows nothing personally of a sale to Mr. Barroll; the house was not completed when the alterations were commenced; he does not know whether all the painting was then done or not. They further proved by Miller, a brother of one of the plaintiffs, that he was employed by them and worked for them on this house; he commenced in 1853, some time in the summer; he recollects the alteration of the basement, and that all the painting was not finished when the alterations were commenc-

ed; that the plaintiffs painted all the alterations; witness did not know any thing of Mr. Barroll in the matter at all.

The defendant then offered in evidence a deed from Kridler to Barroll for this house and lot, dated the 18th of May 1854, and duly recorded the next day. The plaintiffs then asked the following instruction to the jury.

That if the jury find from the evidence that the plaintiffs did the work, and furnished the materials set forth in the claim of lien, for the house therein described, in pursuance of an employment by Kridler to do and furnish the same, and that at the time of so employing them Kridler was the owner of the building and the lot on which it was erected, and that said work was done and said materials furnished continuously until the work and materials done and furnished by the plaintiffs for the building were completed, and that a portion of said work and materials was furnished and done for said building within six months before the filing of their claim for lien, and in pursuance of said employment by Kridler, then that it was not necessary for the plaintiffs to give any notice to the defendant Barroll of their claim and intention to claim the benefit of a lien therefor, in order to entitle them to the benefit of a lien on said building and lot, even though the jury may also find that after the employment of the plaintiffs by Kridler, and more than six months before the filing of this claim for lien, Kridler sold and conveyed the building and lot to the defendant Barroll, unless the jury shall further find that the plaintiffs had other notice of such sale and conveyance than is given by its being recorded, or shall find that there was no work done or materials furnished within six months before the filing of this lien, in pursuance of an employment by Kridler whilst he was actual owner of the building and lot.

The defendant then offered the following prayers:

1st. That the plaintiffs cannot recover in this case, because this court has no jurisdiction over the subject matter in controversy.

2nd. That if the jury find the making, delivery and recording of the deed offered in evidence by the defendant, and

further find that thereafter Kridler went on to complete the building, mentioned in the proceedings, and to make additions and alterations thereto, as *contractor* and not as *owner*, then the plaintiffs cannot recover for any work or materials furnished after the 19th of May 1854, because there is no evidence of notice, as required by the Act of 1845, ch. 176, sec. 1.

3rd. That the plaintiffs are not entitled to recover for any work or materials furnished for the building, described in the proceedings, before the 19th of May, 1854, if the jury find the making, delivery and recording of the deed from Kridler to Barroll, offered in evidence by the defendant, and further find, that the lien claimed by the plaintiffs was not filed till the 16th of December, 1854.

The court (MARSHALL, J.) refused the plaintiffs' prayer and granted the second and third prayers of the defendant, and to this ruling the plaintiffs excepted.

*4th Exception:*—This exception was taken by the defendant to the refusal of the court to grant his first prayer, as stated in the preceding exception.

The verdict and judgment were in favor of the defendant and the plaintiffs appealed:

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Edward Israel* and *Levin Gale*, for the appellants, argued:

1st. That the evidence offered in the first and second exceptions should have been admitted to prove an employment by Kridler, when owner, to do the work, and from which the jury might infer the nature, extent and character of the employment. 4 *Watts & Sergt.*, 262, *Jones vs. Shawhan.* 6 *Harris*, 160, *Holden vs. Winslow.* 7 *Harris*, 341, *Bartlett vs. Kingan.* 10 *Harris*, 491, *Yearsley vs. Flanigen.*

2nd. The principal question presented by the third exception is, whether the sale by Kridler to Barroll, in May 1854, whilst the house was in process of erection, altered or affected the rights of mechanics who were then engaged in doing, and continued afterwards to do, work under a previous employ-

v. 14.

ment by Kridler, as owner? The instructions of the court took away from the jury all questions of fact as to the time and nature of the employment of the plaintiffs, and defeated their claim on the sole ground of the sale to Barroll. The appellants contend:

1st. That the mechanic is only to look to the person who is owner at the time the building is *commenced*, or at the time he makes his contract. *Acts of* 1838, *ch.* 205, *sec.* 9, 1845, *ch.* 176, *sec.* 1, and 1845, *ch.* 287. 2 *Sergt. & Rawle*, 138, *American Fire Ins. Co. vs. Pringle.* 5 *Rawle*, 291, *Pennock vs. Hoover.* 4 *Watts & Sergt.*, 262, *Jones vs. Shawhan.* 6 *Harris*, 160, *Holden vs. Winslow.* 10 *Harris*, 491, *Yearsley vs. Flanagen.* 3 *Md. Rep.*, 168, *Okisko Co. vs. Matthews. Ibid.*, 241, *Wells & Miller vs. Canton Co.* 9 *Md. Rep.*, 184, *Denmead vs. Bank of Baltimore.*

2nd. That if a change does affect it, it ought to have been left to the jury to say whether or not Kridler was acting as agent for Barroll.

3rd. That it ought to have been left to the jury to say whether or not Kridler was the reputed owner.

4th. That no question is raised as to the addition, and if such question was intended to have been raised it should have been submitted to the jury.

3rd. The point raised by the defendant's exception is, as to the jurisdiction of the Court of Common Pleas to enforce mechanics' liens. Ever since the organization of the two courts in Baltimore, it has been a disputed point, in lien cases, where the claim was for a sum between $100 and $500, whether the jurisdiction belonged to the Common Pleas or to the Superior Court. Each court has entertained jurisdiction and enforced claims in such cases, but the point has not yet been before the Court of Appeals. In this state of doubt, it has been the practice of many members of the bar to file the claim for a lien in both courts, and this was done in this case. The amount not being large, ($476.39,) the plaintiffs did not care to run the risk of being thrown out of court and put to costs on a question of jurisdiction, and therefore did not issue a *scire facias*, but determined to wait until the question should

be adjudicated by the Court of Appeals. Under these circumstances the appellee filed his petition in the Court of Common Pleas, calling on the plaintiffs to appear *in that court*, and proceed to establish their claim of lien. This compelled the plaintiffs either to appear or abandon their lien. They did accordingly appear and proceeded to trial, and when the evidence had all been offered, the first point made by the appellee was, that the court, into which he himself had brought us, had no jurisdiction over the subject. The Court of Common Pleas holding to the opinion that it had jurisdiction, the plaintiffs were still put, by the defendant, in the attitude of being compelled to press their case to judgment in that court, or of abandoning the lien altogether, for the judgment of the Court of Common Pleas on the merits, if wrong, unreversed would have bound the parties to it. The plaintiffs were thus again put to the alternative of taking this appeal from the other points decided against them, or of abandoning all claim. The appellants therefore contend on this point:

1st. That the appellee having brought us into the Court of Common Pleas, by his petition, and compelled us to try it in that court, cannot be heard to deny the jurisdiction of the court, or ask this court to inquire into the same. 13 *How.*, 307, *Phil., Wil. & Balto. R. R. Co. vs. Howard.*

2nd. That the Court of Common Pleas has jurisdiction.

3rd. That if it has no jurisdiction, and this court will inquire into that question in this case, yet the instructions granted and the judgment rendered, having been on the merits of the case, if these instructions were erroneous, this court should reverse the judgment without costs, and leave the plaintiffs unaffected by the judgment of the Court of Common Pleas, on the merits, and send the case back to be dismissed, or refuse a *procedendo*. The plaintiffs are entitled to a trial of their right to a lien on this property, on the merits, either in one court or the other, and should, in case the rulings of the Court of Common Pleas on the other questions were erroneous, be entitled to their costs, since their position in the Court of Common Pleas, and in this court, was produced by the defendant's action, and not their own. 2 *Gill*, 254, *Burgess vs. Pue.*

---

Miller & Kauffman *vs.* Barroll.

---

*Benj, C. Barroll,* for the appellee argued:

1st. That the court of Common Pleas had no jurisdiction to file and record the lien claim in this case, or to issue the *scire facias* thereon, and if this be so, this court will affirm the judgment without regard to the other questions. *Cons., Art.* 4, *secs.* 8, 10, 11, 15. 8 *Md. Rep.,* 147, *Blimline vs. Cohen.* 5 *Md. Rep.,* 337, *State vs. Mace.* If, at any stage of the cause, the court finds it has no jurisdiction over the subject matter, it may be availed of; even *consent* cannot give *jurisdiction.*

2nd. That the evidence set forth in the first and second exceptions, was properly excluded, because it did not tend to prove the facts for which it was offered, and because the facts, if proven, were wholly irrelevant and did not tend to establish the right of the plaintiffs to recover their claim, or in any manner affect that claim. If the evidence had been admitted the jury could not legally have found, that the painting was done under a contract with Kridler, to do all the painting for the house in question.

3d. That the ruling in the third exception was proper and ought to be affirmed. *Time* was here of the essence of the whole proceeding, (6 *Gill,* 17, *Carson vs. White,*) and the claim is only for painting done "within *six months last past,*" that is, six months before the filing of the lien, and the appellee had purchased the property prior to this time. The appellee insists upon these propositions:

1st. That a party who intends to avail himself of the lien law, to bind the owner of the property, is bound to ascertain who is the owner *at the time he does the work and furnishes the materials.* 4 *Md. Rep.,* 296, *Greenway vs. Turner.*

2nd. That if the ownership is changed, after a party has been employed to do work, or while the work is in progress, such change establishes new relations between the parties and the former relations are necessarily at an end. These new relations arise under the lien law and not by the act of the parties.

3d. That a *personal* contract about work on a house, does not bind or affect a subsequent purchaser, with or without

notice of such contract. It binds only individuals making such contract; it is not like a covenant running with the land.

4th. That a party who has done work for an *owner* and also, for an *agent* or *contractor* of a subsequent owner of the same building, cannot link the work together in one claim of lien, and thus avoid giving the subsequent owner the notice required by law, of the intention to claim the benefit of the lien law. Nor can such party, in this manner, evade the requirement of the law, in relation to filing the lien within six months. The party must file each claim in the several capacity in which he has done the work.

5th. That an addition to a house is not liable to a claim of lien and cannot therefore be used in aid by a claimant to bring his claim within the six months mentioned in the Act. *Act of* 1845, *ch.* 176, *sec.* 3. 10 *Barr.,* 379, *Landis's Appeal.* 8 *Watts,* 514, *Miller vs. Oliver.* 2 *Barr.,* 77, *Driesbach vs. Keller.*

6th. That the appellee bought the house *as it stood,* and *all* work done after the purchase was done for him, Kridler being only his agent or contractor.

7th. That the cardinal error in the plaintiffs' prayer is in supposing that the building is affected in the hand of a present owner by a *contract,* made with a former owner—that the lien binds by virtue of the contract—whereas the lien law does not embrace or regard a contract to do work or furnish materials; it is only the doing of the work or furnishing the materials which gives the lien; when the contract is complied with, it is the *work done,* and not the contract, which originates the lien, and the law provides, that the notice to the *owner* shall be calculated, not from the date of the *contract* between the parties, but within sixty days after the work or materials shall have been *done or furnished. Act of* 1845, *ch.* 176, *sec.* 1. There is no notice to be given until after the right to file a lien has attached.

8th. The defendant's prayer contains the plain principle, that the plaintiffs cannot recover for work done before the 19th of May 1854, because the claim was filed too late. And they cannot recover for work done after that date, because they did not give the notice to the owner required by the Act of

1845. And they cannot link the two together, because the work was done in two distinct and several capacities, to wit, for Kridler, as owner, and for Kridler, as contractor for the appellee.

BARTOL, J., delivered the opinion of this court.

The appellants, on the 16th of December 1854, filed in the office of the clerk of the Court of Common Pleas, their claim upon a dwelling house and appurtenances, for work done and materials furnished, at the instance of Jacob F. Kridler, who, they allege, was the owner of the property. No *scire facias* having been issued, the appellee filed his petition in said court, under the 22nd section of the Act of 1838, ch. 205, alleging that he was the owner of the property, and praying that Kaufman and Miller might appear and proceed to establish their lien, as if a *scire facias* had issued.

A trial was had, and the verdict and judgment being in favor of the appellee, this appeal has been prosecuted.

It was agreed between the counsel, "that under the plea, *non assumpsit*, the claimant and defendant might avail of any defence which could be made by special plea, as fully and to all intents and purposes."

In our opinion, the evidence offered by the plaintiffs, in the first bill of exceptions, was properly rejected as irrelevant. The question in issue was, whether the plaintiffs had done the work on the house, on which the lien was claimed, in pursuance of a contract with Kridler to do all the painting on that house, or to do all the painting on all the houses built by Kridler, and the proof offered was, that they had painted several other houses, in 1853 and 1854, for Kridler, and, in each instance, had done the whole painting on said houses. This evidence could not tend to prove the fact for which it was offered. But we think there was error in the ruling of the court on the second bill of exceptions. The testimony of the witness, Miller, of the declaration made by Kridler to one of the plaintiffs, about the time when the house in question and the one adjoining thereto (which Kridler was also building) were commenced, was competent evidence to go to the

jury for the purpose stated in the exception, and ought to have been admitted.

We are also of opinion that the court erred in refusing the plaintiffs' prayer, and in granting the second and third prayers of the defendant. They form the third exception, and present the question, as succinctly stated in the appellants' brief; "whether the sale by Kridler to Barroll, of the house and lot, whilst the house was in process of erection, and unfinished, altered or affected the rights of mechanics who were then engaged in doing, and continued afterwards to do work, under a previous employment by Kridler, when owner?"

Both the second and third prayers of the defendant were, improperly granted. The latter took away from the jury the consideration of the nature of the contract under which the work was done by the plaintiffs, and the time when such contract was made, and defeated their claim upon proof of the sale alone; and the former erroneously made the rights of the plaintiffs depend upon the relations subsisting between Kridler and Barroll after the sale, whereas the right of the plaintiffs to recover depends upon the question, whether the work done and materials furnished were done and furnished by them continuously, under one contract or employment by Kridler, made while he was owner. That fact was properly submitted to the jury by the prayer of the plaintiffs, which ought to have been granted.

This position is sustained by all the authorities cited by counsel in the argument, and we refer to them without again repeating them here.

All the questions presented by the exceptions were fully argued, and we have expressed our opinion upon them in compliance with the request of the counsel on both sides, who have intimated that thereby the present controversy may be finally settled without further litigation. We are, however, of opinion, that the objection of the appellee to the jurisdiction of the court in this case was well taken. The jurisdiction of the Court of Common Pleas is limited and defined by the provisions of the Constitution. It has original jurisdiction only "*in suits where the debt or damage claimed shall be over*"

one hundred dollars, and shall not exceed five hundred dollars;" Art. 4, sec. 10. That provision of the Constitution has been construed by this court in the cases of The State vs. Mace, 5 Md. Rep., 337, and of Blimline vs. Cohen, 8 Md. Rep., 147. What was there said is equally applicable here. The language does not embrace a proceeding to enforce a mechanic's lien, which is not a suit for debt or damage, but a proceeding in rem. by scire facias upon a record. 6 Gill, 25.

In addition to what has been said in the cases cited from 5th and 8th Maryland Reps., we may add, that the clerk of the Common Pleas Court has no authority to record mechanics' liens; by the 15th section of Article 4, they are required to be recorded in the office of the clerk of the Superior Court, and the only jurisdiction to enforce them is, by the 11th sec. of the 4th Article, conferred upon the Superior Court in which they are recorded.

The Court of Common Pleas being without jurisdiction in this case, the judgment will be reversed without a procedendo.

Judgment reversed.

(Decided July 15th, 1859.)