ICHABOD JEAN, and others, *vs.* JOHN W. WILSON & SON, and others.

HENRY McSHANE & Co. and N. W. HIRSHBERG & Co. *vs.* ICHABOD JEAN, and others.

*Article 61, section 15, of the Code—Mechanics' Liens: priority of, as against other Incumbrances; what is the Commencement of a building in regard thereto.*

J. and others were the owners of certain lots in Baltimore, which were of such grade with regard to the surrounding streets, and so covered with water, as to be unavailable either for building or leasing. In October, 1869, the owners, in order to make them available, but without any intention of erecting buildings at that time, began to grade and fill the lots; but in the front portion thereof, which was below grade, instead of filling in with earth, foundation walls and a tank were put in, in order to get rid of the standing water, and to avoid the expense of again removing the earth for cellars, when the owners should desire to build. These improvements were finished in December, 1869, and the workmen paid off. On the 23rd of February, 1870, the owners leased the lots, so improved, to G. for 99 years renewable forever, and on the same day, took from him mortgages to secure the rent reserved, and the payment of certain advances to be made for the erection of buildings; the mortgages reciting that their execution and recording were conditions agreed upon prior to the making of the leases and to the agreement for the advances, and also to the entry of the lessee, or the doing of any manner of work by him upon the premises. G. took only the legal title to the property, having consented to hold it for L., under whom building was begun in the spring of 1870, after the recording of the mortgages, substantially upon the foundations already laid. Liens were filed against the property by the mechanics and material-men interested, under the Mechanics' Lien Law. (Art. 61, of the Code.) Section 15 of that Article, provides that the lien thereby given "shall be preferred to all mortgages, judgments, liens and incumbrances which attach upon the said buildings or the ground covered thereby, subsequently to the commencement thereof." Upon appeal from a decree giving priority to the lien-claimants, it was HELD:

Jean, *et al. vs.* Wilson, *et al.*   McShane, *et al. vs.* Jean, *et al.*

1st. That the putting in of the foundation walls by the owners, was not a commencement of the buildings within the meaning of the law.

2nd. That although after a building has been commenced, a change of ownership during its progress cannot affect the rights of the parties, yet in this case, the first work done by L., was the commencement of the buildings.

3rd. That the mortgagees were entitled to priority.

APPEALS from the Circuit Court of Baltimore City.

The facts of the case in regard to the question of priority are stated in the opinion of the Court. The following are extracts from the portion of the opinion of the Court below, (PINKNEY, J.,) in regard to the validity of the several mechanics' liens claimed, which is referred to and concurred in by this Court:

"The proceeding being *in rem*, the object in stating the names of the parties connected with the structure, is a designation of the property and not of the person. This object is generally effected by naming the owner alone; still, when there is also a contractor, builder or architect, conformity with the statute requires him to be named; what would be the effect of a neglect to notice him in a proper case, we are not called on to declare, since it nowhere appears that there was in this case a distinct contractor."

"But I think it is perfectly competent for the Court, under the provision of the 41st section, to allow such amendments to be made in the liens filed, as shall make them conform to the facts and circumstances developed in the proofs, and upon the proper application I will sign the necessary order. *Gault vs. Wittman*, 34 *Md.*, 35. But if Greene be regarded as the owner, then, under the authority of the recent case of *Weber vs. Weatherby*, 34 *Md.*, 656, Lester may be treated as his agent, and the work and materials, as done and furnished under Greene's authority, and he estopped by his own conduct from dis-

puting his own claims, and surely Jean cannot occupy any stronger grounds than Greene and Lester.''

"Having disposed of this general objection, I proceed to consider the special lien-claims:

"The lien-claim of Bevan & Sons is, I think, not defective, although the bill of the particulars has no date on it but what appears to be the date of the bill; it appears in the body of the lien that the mantels were furnished between the second day of May and the third day of June, 1871; I have frequently held that the bill of particulars is sufficient if it contains two specified days within which it is stated that the work was done or materials delivered. This has the authority of the Pennsylvania cases, and is, I think, a reasonable compliance with the requirements of *Carson vs. White;* and I think it sufficient if the same appears from the *body* of the claim, as in this case. *See Sergeant's Mechanics' Lien Law, pages* 235 *and* 236; *Calhoun vs. Mahon,* 2 *Harris,* 58; *Richabaugh vs. Dugan,* 7 *Barr,* 394; *Bayer vs. Reeside,* 2 *Harris,* 167; *Hillary vs. Pollock,* 1 *Harris,* 186; *Driesback vs. Keller,* 2 *Barr,* 77; *Shaffer vs. Hull,* 3 *Pa. L. J.,* 321.''

"The second objection, which is as to notice, I have disposed of; no notice was necessary in the view I have taken of the case, whether Greene be regarded as owner and Lester as his agent, or Lester as owner and Greene as holding merely the legal title, with no beneficial interest in the property; and these remarks, of course, apply to the objections to all other liens on the ground of want of notice.

"The third objection, which is because the lien was not filed within the period required by the 12th section of the Lien Law, is not applicable in the case, in the view I have taken of the relation of Greene and Lester to the buildings.

"As to the lien of F. H Davidson, I think there should be a deduction as claimed—the contract appearing to be

at cash prices. But I think the claim is properly proved; Lester's declarations or admissions would not be admissible; (*Carson vs. White*, 6 *Gill*, 17;) but, under the Act of Assembly of 1864, chap. 109, clearly he is a competent witness to prove delivery: *see also*, 7 *Barr*, 394; 12 *Harris*, 510; 5 *Penn. Law Journal*, 323. So in the case of Collinson's lien and the case of Wilson's lien, I think Lester is a competent witness to prove the delivery.''

''The defect in Crout's lien is cured by the amended lien filed at the hearing. The lien of Hirshberg & Co. is wholly defective. There is no proof of the required notice to either Lester or Greene and the delivery is not proved.''

''I think there is sufficient proof of the lien of Hirshberg & Bro. I think the lien of Joel N. Blake is not defective. *See Sergeant's Mechanics' Lien Law*, 233, 238, 239.''

''The claim of Shorey & Eigelberner, it is very clear, was not filed in time. See the 23rd section.''

In the case of Hirshberg & Co., the materials were charged to a painter named Wood, who furnished the materials and did the work under contract with Lester. Shorey & Eigelberner assigned their claim, with authority to file a lien in their name, to McShane & Co. on the 2nd of March, 1871, the date of the last item charged being 3rd of January, 1871. Some additional work was done by one of the firm, as an employé of McShane & Co., on the 2nd of August, 1871, and the lien was filed on the 20th of November, 1871.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*R. F. Brent* and *Orville Horwitz*, for Jean and others, mortgagees.

The true construction of the 1st and 15th sections of the Lien Law, has reference to that building for which

the said work and materials are done and furnished: the foundations put in in this particular case had no reference to any buildings at all, but might have been entirely changed or greatly modified; the commencement of the buildings by Greene, the lessee was, in contemplation of law, the actual beginning of the buildings for which the work in question was done and the materials furnished. *Presbyterian Church vs. Stettler,* 2 *Casey,* 246; *Smedley vs. Conaway,* 5 *Am. Law Reg.,* 442; *Stevenson vs. Stonehill,* 5 *Whart.,* 304; *Nelson vs. Campbell,* 28 *Penn.,* 156; *Norris' Appeal,* 30 *Penn.,* 122.

In this case, the leases and mortgages were parts of one transaction; they were executed and recorded at the same time, and the mortgage being recorded, gave notice to the world that the lessee had agreed that "no manner of work had been done on the premises" for the erection of the particular buildings referred to in said contract; and had, therefore, notified the material men and mechanics that if any work had been theretofore done on the premises, it was not for the buildings which he (the lessee) was about to put up, and for which he was about to procure materials and have work done.

In one sense, both the lien claimants and the mortgagees claim adversely to the lessee—that is to say, they both desire to subject his interest to their claims; in another sense, they claim under the lessee, inasmuch as they can have no greater right than he: and as the lessee in this case was estopped from denying that the buildings were commenced after the execution of the mortgage; so also, were those claiming under him.

*John P. Poe* and *William S. Waters,* for Wilson and others, and McShane and others, lienors.

The foundations having been put in before the mortgages were executed and delivered, the question is, what in contemplation of the Lien Laws is to be regarded as the commencement of a building?

By the settled and unbroken current of decisions in Pennsylvania (from which State we have borrowed the Lien Laws) and in Maryland, the commencement of a building is plainly the first work done on the ground— the striking of the spade into the earth in digging the foundation, or, if there be no such foundation, the laying of the first stone or timber. *Sergeant's Mechanics' Lien Law*, 166 ; *American Fire Ins. Co. vs. Pringle*, 2 *S. & R.*, 138 ; *Pennock vs. Hoover*, 5 *Rawle*, 307 ; *Hern vs. Hopkins*, 13 *S. & R.*, 269.

This Court, in *Brooks vs. Lester*, 36 *Md.*, 65, says, that within the meaning of the 15th section of Article 61, the first labor done on the ground, which is made the foundation of the building and is to form part of the work, suitable and necessary for its construction, constitutes the commencement of the building.

These cases, which decide the precise point, ought to be conclusive upon the question.

There is no pretence that there was any change made in the plan or design of these houses ; and therefore the class of cases applicable to such a state of facts have no pertinency here.

If the commencement of the foundations is not to be regarded as the commencement of the buildings, it is difficult to understand what is to be so regarded. There is no hardship in this case in following the interpretation established by the cases referred to.

Grason, J., delivered the opinion of the Court.

The main question presented by the record in this case is, whether the mortgages or the lien claims are entitled to priority. The proof shows that the appellant Jean, William F. Burns and Samuel Meakin were the owners of certain lots in Baltimore city, fronting on the south side of Boundary Avenue, and that these lots were of such grade with regard to the adjoining streets and avenues,

and so covered by water as to render them unavailable in their then condition for either building or leasing.    In the fall of 1869 the owners determined to make such improvements upon them as would make· them available for either leasing or building, and accordingly, without any intention of erecting buildings thereon at that time, began the improvements in the month of October, and completed them early in December, 1869, when the workmen employed were paid off and discharged.    The improvements thus made consisted in removing earth from some parts of the lots and with it filling in other parts which required filling ; but where the houses now stand, instead of filling in with earth, foundations were made and walls built so as to avoid the trouble and expense of again removing the earth for cellars, whenever thereafter the owners might think proper to build. A tank was also put in, and there is proof to show that it was necessary to put in the foundation walls and tank in order to remove the water which lay upon the lots some four feet deep.   Some time after the completion of these improvements, on the 23rd February, 1870, the owners leased the above-mentioned lots to one Benson M. Greene, and on the same day took from him mortgages to secure the rent reserved, as well the repayment of certain loans and advances to be made to the lessee to be used in the erection of buildings on the said lots, the mortgages reciting that their execution, delivery and recording were conditions agreed upon prior to the making of the leases, and prior to the agreement for the loans and advances, and also prior to the entry of the lessee or the doing of any manner of work by him upon the premises or any part thereof.    These mortgages were recorded on the second day of March, 1870.    It is shown by the evidence that Benson M. Greene in reality took only the legal title to the property thus leased to him, having consented to take the lease and hold the property for his brother-in-

law, J. Thomas Lester, who was the party really entitled
to the property under the leases. In the spring of 1870
the improvements were commenced on these lots by J.
Thomas Lester. and the liens set out in the record were
filed by the mechanics and material men who had done
work upon, and furnished materials for the construction
of the houses. It further appears that, on the 12th day
of June, 1871, four of the above mentioned lots were
assigned by Greene to Amelia Berry, one of the appellants.
Some of the parties filed the bill in this case in the Cir-
cuit Court of Baltimore City, to enforce payment of their
liens, in which all other lien claimants, the mortgagees,
and all other persons having any interest in the property
were made defendants, and, upon final hearing, the Cir-
cuit Court passed a decree for the sale of the property,
sustaining as valid the liens of the appellees, rejecting
the liens of Hirshberg & Co. and Shorey & Eigelberner,
and giving priority to the liens thus declared to be valid,
over the mortgages. From this decree Jean, who it
seems is now the only party interested in the mortgages,
Amelia Berry and her husband, and Hirshberg & Co.
and McShane & Co., who are the assignees of the lien of
Shorey & Eigelberner, have all appealed.

The 15th section of Article 61 of the Code, provides
that, "The lien hereby given shall be preferred to all mort-
gages, judgments, liens and incumbrances which attach
upon the said building or the grounds covered thereby,
subsequently to the commencement thereof, and all the
mortgages and liens other than liens which have attached
thereto prior to the commencement of the said building,
and which by the laws of this State are required to be
recorded, shall be postponed to said liens, unless recorded
prior to the commencement of said building."

It was contended by the counsel of the lien claimants
that the foundations put in by the lessors of J. Thomas
Lester, in the fall of 1869, constituted the *commencement*

*of the buildings* erected by him, and that, as they were put in before the execution and recording of the mortgages of the lessors, the former are entitled to priority in the payment of these claims.

In the case of *Brooks vs. Lester*, 36 *Md.*, 69, 70, this Court has said, quoting from *Pennock vs. Hoover*, 5 *Rawle*, 308, "that the first labor done on the ground, which is made the foundation of the building, and is to form part of the work suitable and necessary for its construction, constitutes the commencement of the building." The cases of *American Fire Ins. Co. vs. Pringle*, 2 *Seargt. & Rawle*, 138; *Pennock vs. Hoover*, 5 *Rawle*, 308; *Horn vs. Hopkins*, 13 *Seargt. & Rawle*, 269, and *Seargt. Mechanics Lien Law*, 167, 168, are to the same effect, and they are relied upon by the counsel of the lien claimants as conclusive of this question in their favor. While this Court, in the case of *Brooks vs. Lester*, declared what work should be regarded as the commencement of the building, as above recited, it decided that the building had not been commenced at the time the mortgage was recorded, nothing having been then done except to drive some pegs in the earth to mark where the foundations were to be dug. In the Pennsylvania cases, above cited, it appears that the work, which was held to be the *commencement of the buildings*, had been done with the intention and purpose, then formed, to continue the work to the completion of the buildings. Where work is done with the design to go on and construct a building, there can be no question that it must be regarded as the *commencement of the building;* and in such case all liens attaching subsequent thereto would, under the provision of the lien law, be postponed to the liens of mechanics and material men who might bestow labor or furnish materials for the construction of the building. The work done before the recording of the mortgage, so as to give mechanics liens priority, must, however, be the *com-*

*mencement of the building,* and such is the very language of the lien law. In the case before us the proof shows that the work done was not done with any design or purpose of constructing a building at that time, but was done solely with the intention and for the purpose of grading the lot and removing the water therefrom, so that it might be in a condition to lease or to build upon at some future time. That this was the intention and purpose of the owners is conclusively shown by the fact, that when this object was accomplished, work was immediately stopped and the workmen paid off and discharged. How can it be held, with either reason or justice, that a building has been commenced in the face of the uncontradicted proof in the case, that the owners had no intention to erect any building, but merely to grade and remove the water from the lot, and when it is apparent that, when these objects were attained, nothing more was ever done upon the premises until the spring of 1870, and then, not by the parties who had made the improvements referred to, but by their lessee. Although, after the building has been once commenced, a change of ownership during its progress to completion cannot change or affect the rights of the parties; yet in view of the facts of this case, the first work done by J. Thomas Lester must be regarded as the commencement of the buildings, and, as the mortgages were executed and recorded before that time, they are entitled to be first paid out of the proceeds of the sales of the property.

We have carefully examined the liens of the appellees and the evidence relating to them, and concur in the views of Judge PINKNEY as to their validity as expressed in his opinion.

Upon the appeal of Hirshberg & Co., and McShane & Co., assignee of Shorey & Eigelberner, the decree of the Circuit Court will be affirmed. In the case of the former, it appears that they furnished the articles charged in

their account to Wood, who did the painting under a contract with J. Thomas Lester, and no notice whatever appears to have been given by them of their intention to file a lien. We think the proof of the delivery of the articles is also deficient. The lien of Shorey & Eigelberner was clearly not filed within the time required by the statute.

The decree appealed from will be reversed in part and affirmed in part, and the cause remanded for further proceedings in conformity with the views expressed in this opinion.

*Decree affirmed in part,*
*and reversed in part,*
*and cause remanded.*