## THE FREDERICK COUNTY NATIONAL BANK
### *vs.*
### JOSEPH B. DUNN ET AL., PARTNERS, TRADING AS JOSEPH B. DUNN & SONS.

*Mechanics' liens: notice of claim of lien; time for——; several contracts; time for filing liens; must be according to each contract; estoppel on owner, by ruling of architect.*

A supervising architect is the agent of the owner.        p. 394

Unless notice of an intention to claim a mechanics' lien is given within the time prescribed by section 11 of Article 63 of the Code, no lien can be maintained.        p. 395

Where there are two separate and distinct contracts for labor or materials, although they have relation to the same building, they can not for the purposes of the lien be coupled together, so as to extend the date for the filing of the lien down to the time the last material was furnished or the last labor performed, under the later contract.        pp. 395-396

But as to each contract, the time for the giving of a notice, or the filing of a lien, is dependent for its being in season as to the particular contract under which the work is done; and conversely where there is a single entire contract, the time is to be computed from the last material delivered or work done, in connection with the contract, even though that be small in amount, or far removed in point of time from the balance of the work.        p. 396

For making alterations to a bank there was only one single contract; the supervising architect, by the contract, was made the judge of any dispute about the interpretation of the contract; a sub-contractor thought he had completed the work under the contract, but the architect ruled that some work under the contract was unfinished; the contractor and sub-contractor, by agreement among themselves, did the work; the sub-contractor filed his notice of his intention to claim his lien for the work; if the work had been completed as the sub-con-

tractor claimed, the time to claim a lien had expired; but, as the architect—the agent of the owner—had ruled that the contract had not been completed, it was *held,* that the owner was estopped, and that the lien should be allowed, as it had been filed within the statutory time of doing the work.          p. 397

*Decided February 12th, 1915.*

Appeal from the Circuit Court for Frederick County. In Equity. (URNER, C. J., and WORTHINGTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE, and CONSTABLE, JJ.

*Benjamin F. Reich* and *George A. Pearre, Jr.,* (with whom was *John S. Newman* on the brief), for the appellant.

*Aubrey Pearre, Jr.,* and *Milton G. Urner, Jr.,* (with whom were *Milton G. Urner* and *Barton, Wilmer & Stewart* on the brief), for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

When John K. McIver was awarded the contract for remodeling the Frederick County National Bank building he sublet portions of the work to be done. Joseph B. Dunn & Sons had submitted an estimate for doing the marble and tile work in the building, in which the various items to be furnished and performed by them were specified, and a lump sum named for these of $1,760.70. This proposition was made on April 9th, 1912, before the contract was actually awarded to McIver. Some discussion appears to have arisen between Dunn and McIver whether at one point marble or tiling was to be used. owing to an apparent ambiguity of the specifications. Mr. Leach, the architect, was called on to construe the language, which having been done resulted in a reduction of the price named by Dunn from $1,760.70 to $1,750, and on this basis the proposal of Dunn was accepted on February 27th, 1913. The performance of the work was begun by Dunn about April 7th, 1913, and completed, ac-

394    FREDERICK CO. NAT'L. BK. vs. DUNN.

Opinion of the Court.                    [125

cording to the interpretation placed by Dunn & Sons on the contract by May 19th, on which date their workmen left Frederick and returned to Baltimore. A bill was rendered by Dunn & Sons to McIver promptly thereafter, for the contract price of $1,750.

When Dunn's employees left Frederick there was one toilet room, located between the first floor and the basement, in which no tiling had been done either for the floor or side walls. This had been omitted for the reason that in the belief of Dunn & Sons it was not included in the work which they had contracted to do, and did not appear in the plans and specifications attached to and made a part of the contract between McIver and the bank, with which plans and specifications they were entirely familiar.

The architect was Alfred C. Leach; he "made the plans and specifications and supervised the work for the owners," according to his own testimony. He was thus for many purposes the agent of the owner. A month or six weeks after Dunn's employees had left the building, completed as they supposed, Leach asked McIver, the general contractor, why he didn't tile that toilet, and he (McIver) said it wasn't in the contract. Leach replied that it was in the contract and would have to be tiled. McIver communicated with Dunn in regard to the tiling of this room and Dunn took the same position that McIver had taken, that the tiling of this toilet was not included in the plans and specifications of the contract. This raised an issue between Leach, representing the owner, and the contractor. Such a contingency was provided for in the contract as follows:

> "Should any discrepancy exist between the plans and specifications or any parts of either, or should the language of any part of the contract or specifications be ambiguous or doubtful, the architect shall decide as to the true intent and meaning, and all questions, disputes or differences as to any part or detail of the work shall be referred to the architect for his decision."

The next steps are thus described by Mr. McIver in his evidence: "The architect ruled we should, insisted that we should, and I did it to avoid litigation, to get my work through and have it accepted, and I did it without compensation from the bank." He does not testify, however, that Dunn & Sons ever acquiesced in the decision of Leach, and he distinctly says that Dunn did all of the work required of him under his contract, but because of Leach's decision McIver made an arrangement with Dunn to do the tiling of the floor and walls of this toilet, for which McIver was to pay the sum of $91, or about half of the total cost of the work to be performed, and Dunn assumed the balance. This last work was done between the 21st and 26th of July, and on the last named date a bill was rendered to McIver by Dunn for the $91. Both McIver and Leach testify that the work done by Dunn was in every way satisfactory.

Having received from McIver only $350 up to August 7th, Dunn & Sons served a notice on the bank of their intention to claim a mechanics' lien, and on the following day a lien was filed. The claim consisted of three items, the original contract price of $1,750, the delivery on May 21st of five bags of cement, $2.50, and the tiling of the basement toilet in July, $91.

The time within which notice of an intention to claim a mechanics' lien must be given is fixed by Article 63, section. 11 of the Code, and where notice is not given within the time prescribed no lien can be maintained. In this case if the proper date from which to compute the time was the doing of the last work in May, the lien was filed too late to be given effect, while if the proper date was July 26th it was in ample season.

It is firmly settled by the decisions, both in this State and elsewhere, that if there are two separate and distinct contracts, even though they have relation to the same building, they can not for the purposes of a lien be coupled together so as to extend the date for the filing of the lien down to the

time of the last material delivered or work performed under the latest contract, but that as to each, the time for the giving of a notice or the filing of a lien is dependent, for its being in season upon the particular contract under which the work is done, and conversely that when there is but a single entire contract, the time is to be computed from the last material delivered, or work done, in connection with that contract, even though that be small in amount or far removed in point of time from the balance of the work. *Ger. Luth. Church* v. *Heise,* 44 Md. 469; *Watts* v. *Whittington,* 48 Md. 356; *Miller* v. *Barroll,* 14 Md. 173; *Maryland Brick Co.* v. *Spilman,* 76 Md. 341; *Fulton* v. *Parlett,* 104 Md. 62; *Phillips on Mechanics' Liens,* sec. 229; *Farnham* v. *Richardson,* 91 Me. 559; *McIntire* v. *Trautner,* 63 Cal. 429; *Miller* v. *Wilkinson,* 167 Mass. 136.

The crucial question in the present case, therefore, is whether the contract was an entire one, or whether there were two separate and distinct contracts. There is no suggestion that the bank ever made but one contract, or that anyone acting on the part of the bank did so. The question in this case seems to have arisen because of the insistence on the part of the architect, who for that purpose was the agent of the bank, that the work which was not done until the month of July was a part of the original contract between the bank and McIver, and no matter for what reason, it is also clear that this construction was acquiesced in by McIver. There was no new agreement between between the bank on the one hand and the contractor or sub-contractor on the other. The arrangement between McIver and Dunn is testified to have been in the nature of a compromise rather than a clear, definite contract. It was a matter of adjustment between themselves in which the bank was in no way involved or affected. So far as the bank had any occasion whatever to know, the decision of their agent, Leach, was accepted and fully acquiesced in by both McIver and Dunn, and the work which remained to be done in July was work

which was fully provided for in the contract and which it
had a right to require.

This is not a case where a material man, by a small deliv-
ery of material long after he has complied with his agree-
ment, seeks to extend the time within which he can claim
the advantage of the statute. Dunn had left the work in
May believing it to have been fully completed, and he is
afterwards called upon, at the instance of the bank, not to
do some new and distinct work, but to complete work which
he had agreed to do under his contract. If it was work
which should have been done under that contract, then the
contract was not fully performed until the latter part of
July, and the time within which he could give notice under
the statute ran from the completion of the work in July, and
that it was so included, had been decided by the architect,
who was expressly empowered to make the decision. The
notice given, therefore, on the 7th of August was in ample
season to comply with the statute.

There is still another reason which leads to the same con-
clusion. There are a large number of cases which lay down
the rule that where the owner insists that a building is not
completed and that he will not accept it, owing to some im-
perfection, he is estopped thereafter from denying that the
building was completed prior to the date of correcting such
imperfection. *Hubbard* v. *Lee,* 102 Pac. 528; *McIntire* v.
*Trautner,* 63 Cal. 429; *Rieflin* v. *Grafton,* 115 Pac. 851;
*Minn. Trust Co.* v. *Gt. Northern R. R.,* 74 Minn. 30; *Shaw*
v. *Fjellman,* 72 Minn. 465; *St. Louis Natl. Stock Yards* v.
*O'Reilly,* 85 Ill. 546.

A case very similar to the present one and in which this
rule was laid down is that of *Stidger* v. *McPhee,* 62 Pac.
332. As applied to the present case, the rule is concisely
this—that the bank through its agent having insisted that the
tiling of the particular toilet room was embraced within the
terms of the original contract so as to avoid the payment of
any charge as for extra work upon it, will not now be heard

to claim that it was not included in that contract so as to make a new contract requisite for its completion.

With respect to the item in the account for $91 no lien can be allowed for that. The work for which that account was rendered if properly included in the original contract was covered by the contract price of $1,750, and if not properly included in that was nevertheless so accepted by both the owner and contractor McIver, and any further agreement which he may have made with Dunn in respect to it, was a personal arrangement for which no lien was maintainable.

The item of $2.50 for cement was hardly referred to in the testimony given in the case nor in the argument. This appears to have been furnished in May, and unless it was required for the performance of the contract, the notice was insufficient, and if it was required in connection with that contract was covered by the general contract price of $1,750, but there is one other factor affecting this item. Payments aggregating $350 were made by McIver to Dunn on account of the work done under the sub-contract. There do not appear to have been any specific directions given as to the application of this money when it was paid, and Dunn saw fit to make the item of $2.50 a charge against the money which he received, and no objection was raised to this by McIver, and under such circumstances no good reason appears for disturbing the decree of the Circuit Court for Frederick County on account of this item.

There was some reference made in the briefs to the fact that Dunn had received a note of McIver for $1,000, but that can in no way affect this controversy, as the proof fails to show that the note was received in payment of that amount. *Code,* Art. 63, sec. 3; *Brick Co.* v. *Spilman,* 76 Md. 337; *Wix* v. *Bowling,* 120 Md. 265; *McLean* v. *Wiley,* 176 Mass. 233.

The decree appealed from will acccordingly be affirmed.

*Decree affirmed, with costs.*