HARRISON *v.* STOUFFER ET UX.

[No. 140, October Term, 1948]

*Decided April 27, 1949.*

Submitted on briefs before MARBURY, C. J., and DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*George N. Oswald* and *Edward Oswald, Jr.,* on the brief for appellant.

*Lane, Bushong & Byron, Irvine H. Rutledge* and *Julius G. Maurer* on the brief for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit in equity was instituted in the Circuit Court for Washington County by Lewis Franklin Harrison, a building contractor, to enforce a mechanics' lien against the real property owned by George C. Stouffer and his wife at 927 Spruce Street in Hagerstown. Complainant alleged that he furnished all the labor and materials for the construction of the frame bungalow on defendants' lot, but the Court held that the lien was void, because it was not filed within the time allowed by the statute. Complainant has appealed here from the decree dismissing his bill of complaint.

In the building contract dated July 10, 1947, the contractor agreed to provide the labor and materials, and the owners agreed to pay him "on the completion or

termination of work" for labor at the existing wage scale and the cost of materials furnished plus ten per cent of the cost for supervision. While the contract did not demand any payments prior to the completion of the work, the contractor mailed to the owners his first statement for $2,509.69 on September 4, and that amount was paid on September 12. On October 4 he mailed his second statement for $2,376.96, on which the owners paid $1,950, leaving a balance due of $426.90. On January 10, 1948, the contractor sent his final statement for $5,035.62. Soon afterwards Stouffer, who was a railroad employee, informed the contractor that he feared he might not be able to keep his job on account of diabetes, and that it would be a relief to him to sell the property. In April, before the Stouffers vacated the house and moved to Baltimore, the contractor promised to list the property for sale with a real estate agent. He also agreed to wait for settlement until June.

On July 9, 1948, the contractor wrote to Stouffer: "You will recall that I agreed to wait the month of June, 1948, for some developments on the Spruce Street property. Inasmuch as this time has passed and no arrangements have been made to dispose of the property, I must insist that you take immediate steps to secure funds with which to pay me the amount I have involved in the property. I shall wait until July 28, 1948, before taking any further action in the matter." On July 30 an attorney for the owners replied from Baltimore that they were disappointed with the house and, after specifying twelve things which were "not done" or "improperly performed", made an offer of $2,196.31 to compromise the claim. The contractor, replying to Stouffer on July 31, rejected the offer and demanded payment of the balance of $5,035.62, with interest at five per cent from January 10, 1948. He also warned Stouffer that he had only five days in which to make settlement before the account would be filed in court. But instead of filing his claim at the end of five days, as he had threatened, he went to the house on August 10, after borrowing the key from Stouffer's

father, and fastened a sash-lock at one of the windows and a 4-foot toe-strip along the baseboard in one of the rooms. On August 13 he filed his claim for mechanics' lein, alleging that he worked in the house on August 10 for one hour and a half. The total claim, including $2.77 for labor performed and materials furnished on August 10, is $5,038.39.

The Mechanics' Lien Law, as amended by the Legislature of Maryland in 1943, declares that every building erected and every building repaired, rebuilt or improved to the extent of one-fourth its value in any of the counties shall be subject to a lien for the payment of all debts contracted for work done and materials furnished for or about the same. Laws of 1943, ch. 982, Code Supp. 1947, art. 63, sec. 1; *House v. Fissell*, 188 Md. 161, 51 A. 2d 669. The statute definitely declares the time within which the claim of lien must be filed in order to preserve the lien. This provision is as follows: "Every such debt shall be a lien until after the expiration of six months after the work has been finished or the materials furnished, although no claim has been filed therefor, but no longer, unless a claim shall be filed at or before the expiration of that period." Code 1939, art. 63, sec. 23. It is plain that the words "the work has been finished," as used in Section 23 of the Mechanics' Lien Law, refer alone to work for which a lien may be taken, and are not to be considered as synonymous with the completion of the building upon which the work was done. *Trustees of German Lutheran Evangelical St. Matthew's Congregation v. Heise*, 44 Md. 453, 475.

It is generally accepted that where, even after a contract is substantially completed, the claimant does further work or furnishes further material which is necessary for the proper performance of his contract, and this is done in good faith at the request of the owner, or for the purpose of fully completing the contract, and not merely as a gratuity or act of friendly accommodation, the period for filing the lien will run from the doing of such work or the furnishing of such materials, regardless

of the value thereof. *Bolhuis Lumber & Mfg. Co. v. Van Tubergen,* 250 Mich. 686, 230 N. W. 910. On the other hand, it is equally clear that where the time allowed by statute for filing a mechanics' lien has commenced to run, the claimant cannot thereafter extend the time within which a lien may be filed by doing or furnishing small additional items and thereby fixing a date from which the period must commence to run anew, especially where the doing or furnishing of such items is merely colorable and the real intention is to save or restore a right which is already imperiled or lost, or where the additional work is done or additional materials are furnished without the knowledge, request or consent of the owner. *Dugan v. Howard,* 130 Md. 114, 120, 99 A. 966; *Peerless Unit Ventilation Co. v. D'Amore Construction Co.,* 283 Mass. 121, 186 N. E. 280, 282.

Of course, where the owner insists that his building is not completed and asserts that he will not accept the work because of certain defects, he is estopped from denying that the building was completed prior to the date when the defects were corrected. *Frederick County National Bank v. Dunn,* 125 Md. 392, 396, 93 A. 984. But ordinarily a contractor cannot keep alive his right to a mechanics' lien by performing a trifling amount of labor after the parties considered their contract completed. *Stark-Davis Co. v. Wilson,* 119 Or. 308, 248 P. 1095. This is especially true where there has been an unnecessary and unexplained lapse of time between the completion of the building and the making of repairs. For instance, in *Hibberd v. Finch,* 262 Mich. 506, 247 N. W. 731, where the contractor commenced the construction of a house in June, 1927, and the owner moved into it in November, 1927, the Court held that, although the contractor did a small amount of repair work on the house in 1929 and also put some counterflashing on the roof in 1930 at a cost of $1.75, the bill to enforce the mechanics' lien was properly dismissed because the claim was filed too late.

In the instant case the contractor considered the work of building the house as completed on December 15,

1947, when the owners moved into it. In January, 1948, he sent them a final statement of the account. This statement indicates that the last date on which materials were furnished was December 15, 1947. Stouffer testified that he moved into the house after the contractor had informed him that the house was finished. In April, 1948, when Stouffer, before moving to Baltimore, asked the contractor to help to sell the property, the parties obviously still considered the work of construction as completed. The contractor's letter of July 9, demanding payment of his claim after the period for filing mechanics' lien had expired, also showed that he considered the work completed. He had made no effort to correct any alleged defects during the six months following the completion of the house. Even the attorney for the owners, in enumerating twelve alleged defects in construction, did not request the contractor to correct any of the alleged defects, or to furnish any additional materials. It is clear that the object of the attorney's letter, written seven months after his clients were given possession of the house, was to secure a compromise. The contractor definitely rejected the compromise offer, and gave the owners five days in which to settle. As the building contract provided that the contractor should be paid "on the completion or termination of work," the fact that the contractor demanded interest on his claim from January 10, 1948, gives emphasis to the view that he considered the work completed when the owners were given possession.

It appears that the contractor, after the statutory period of six months had expired, paid 21 cents for the sashlock and 8 cents for the strip of wood, and he did the work without the knowledge and consent of the owners, who were then living in Baltimore. When the contractor was asked on the witness stand who told him to go back to the house on August 10, 1948, he answered, "No one." The contractor had authority from Stouffer to borrow the key to the house only for the purpose of showing the house to prospective purchasers. We think the conclusion is unavoidable that the contractor did not do

the work and furnish the materials on August 10 for the purpose of completing the contract, but for the purpose of saving the mechanics' lien, which was already lost. As the work done and materials furnished on that day could not have the effect of saving the lien, the decree of the chancellor dismissing the bill must be affirmed.

*Decree affirmed, with costs.*