## DISTRICT HEIGHTS APARTMENTS, SECTION D-E, INC., ET AL. *v.* NOLAND COMPANY, INC
(Two Appeals in One Record)

[No. 98, October Term, 1952.]

44

46

*Decided March 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Thomas S. Jackson,* with whom were *Louis M. Denit, Thomas E. Jones, Martin R. Fain* and *Brandenburg & Brandenburg* on the brief, for the appellants.

*Ralph G. Shure* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Noland Company, Inc., a Virginia corporation, filed these two equity suits in the Circuit Court for Prince George's County against District Heights Apartments,

Sections D-E, Inc., and District Heights Apartments, Sections F-G, Inc., to enforce mechanic's liens for plumbing and heating materials furnished upon orders of a subcontractor for installation in the apartment buildings owned by defendants.

James Plumbing and Heating Company, Inc., of Alexandria, was chosen as subcontractor to furnish and install the plumbing and heating equipment in eight buildings for District Heights Apartments, Section D-E, Inc., and in eleven buildings for District Heights Apartments, Section F-G, Inc. The James Company contracted to buy the plumbing and heating materials from complainant, and complainant delivered materials for Section D-E between November 15, 1950, and July 24, 1951, and for Section F-G between November 16, 1950, and August 8, 1951.

On May 9, 1951, the James Company, having encountered financial difficulties, assigned to complainant all its right, title and interest in the money which the general contractor owed it. However, on September 11, 1951, when the bills against the James Company remained unpaid, complainant served upon an agent of each defendant a notice of intention to claim a mechanic's lien.

As neither defendant paid the amount claimed, complainant filed the instant suits, which were tried together. In the first case the chancellor entered a decree awarding complainant a lien for $2,706.71 with interest from October 8, 1951. In the second case he awarded complainant a lien for $4,905.58 with interest from October 8, 1951.

Defendants attacked the decrees on two grounds: (1) that the evidence does not support the finding that the materials for which the liens were imposed were delivered to defendants; and (2) that complainant did not give to either defendant timely notice of intention to claim a lien.

First, defendants contended that, while several of the delivery tickets were receipted by their own agents, most of the other tickets were receipted by the truck

drivers of the James Company "when they picked them up at Noland's place," and the drivers could have hauled the materials to some other places. The procedure of the James Company was for one of its employees to make out a purchase order and send one of its trucks to complainant's supply house, where a clerk would make out a delivery ticket and deliver the materials to the truck driver. There were several drivers employed by the James Company who hauled the materials from complainant's supply house to the apartment buildings in District Heights, but they were not called as witnesses. Defendants contended that it was not proved that they had received the materials for which the truck drivers and other employees of the James Company gave receipts. They argued that a materialman should not be given a lien against an owner of property upon proof merely that he delivered materials to a subcontractor employed on the owner's property.

In an equity proceeding to enforce a mechanic's lien, the claimant has the burden of proving his cause of action. Accordingly, to enforce a mechanic's lien for materials furnished, the claimant must prove the delivery of the materials to the defendant. *Jean v. John W. Wilson & Son,* 38 Md. 288, 298. It has been held in several States that materials furnished for a building must be actually used in its construction or alteration in order to become the foundation of a lien upon it. In most of the States, however, actual use of the materials is not requisite if they were furnished for a particular building or improvement. Maryland has adopted the rule that where a materialman delivers materials to the site of construction of a number of buildings comprised in a single project, it is not essential to the validity of a mechanic's lien claim that he must show in which buildings the specific materials were used, or even that the materials were actually used on the project, if they were purchased for and delivered to the site of the work. *Maryland Brick Co. v. Spilman,* 76 Md. 337, 25 A. 297, 17 L. R. A. 599; *Humphrey v. Harrison Bros.,* 4 Cir.,

196 F. 2d 630. It is reasoned that to require positive testimony that each specific article was used in a certain building would make the Mechanics' Lien Law more of a burden than a benefit. When materials are purchased for use in a proposed building, and they are furnished in pursuance of the contract, and there is no testimony tending to raise a suspicion that the materials were not used in the building, it is reasonable to conclude that the materials did in fact go into the building, especially where it is shown that some of the materials have been used in the construction. *Rice v. Hodge*, 26 Kan. 164; *Standard Lumber Co. v. Fields*, 29 Wash. 2d 327, 187 P. 2d 283, 175 A. L. R. 309.

In the Court below Morris Hirshman, of Alexandria, who had been the secretary of the James Company, testified that the company had ordered the materials from complainant, and that there had never been any question of complete delivery to defendants in accordance with the specifications approved by the Federal Housing Administration. He examined the delivery tickets and identified the signatures of the construction foreman and six employees of the James Company, who received the materials and signed for them in their capacity as agents of the company. He was asked whether it was possible that a truck driver could have hauled some of the materials intended for defendants' apartment buildings to some other buildings. He replied that it was not possible, because each purchase order was distinctly marked for the place intended and "there was only one job on the books with James Plumbing and Heating Company and District Heights." Whether this reasoning has merit or not, it is admitted that the work was completed according to specifications without the necessity of ordering additional materials, and it can be inferred that the drivers did make the alleged deliveries since there was no shortage of materials.

This case is quite similar to *Hill v. Imboden*, 146 Ark. 99, 225 S. W. 330. There, as here, the property owner challenged the sufficiency of the evidence to prove that

alleged materials had been delivered to his premises. The materialman had contracted to furnish all materials for construction of a building at market prices, and he testified that he had delivered the materials as ordered by the workmen in charge of construction. The materialman's custom was to load the materials in a wagon for delivery and to write the items on a delivery slip. He gave two carbon copies to the driver, who left one copy with the man to whom he delivered the material and obtained a receipt on the other copy. At the trial he produced the slips for each item, but, although it had been the custom for the men in charge of construction to sign the slips, it appeared that many of the slips in question were not signed. The owner offered to pay for the items for which receipts had been signed in full discharge of the claim, but the materialman refused to accept the amount offered. Although the drivers who had delivered the materials were not called as witnesses, and although the materialman did not show by direct testimony that all of the loads were delivered on the premises, the chancellor accepted the testimony of the materialman that his accounts were correctly kept, and rendered a decree giving him a lien for the full amount of his claim. The Supreme Court of Arkansas affirmed the decree on the ground that the materialman had testified that he gave the owner an itemized account and the owner made no objection to it, and, although the testimony was denied, the chancellor believed it.

At the trial in the Court below, while one of the witnesses for complainant was on the stand, the chancellor stated that complainant had made out a *prima facie* case and that, if defendants should offer any evidence to contradict it, complainant would be given an opportunity for rebuttal. It is an accepted rule that where a plaintiff has established a *prima facie* case, and the defendant seeks to support his defense by facts which are or ought to be within his knowledge, the burden shifts to him. So, while the burden is on the materialman in a mechanic's lien case to establish the fact that

he delivered the materials for which he claims the lien, it will be presumed that all materials which he shipped to the defendant were duly delivered, in the absence of some direct evidence to the contrary. In the case before us no evidence was produced to contradict the *prima facie* evidence that the materials as ordered and charged had been delivered to defendants. We, therefore, conclude that the evidence was sufficient to support the finding of the chancellor that the materials were delivered to defendants.

Secondly, we reject the contention that complainant failed to give each defendant timely notice of its intention to claim a lien. The Mechanics' Lien Law provides: "If the contract for furnishing such work or materials, or both, shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing the work or furnishing the materials, or both, shall not be entitled to a lien unless, within sixty days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien." Code 1951, art. 63, sec. 11.

We have held that if the notice of intention to file a mechanic's lien is given to the owner of the property before the lien claim is filed, it should definitely state the intention of the claimant to claim the lien, and should also fully and specifically state the particulars of the claim and the nature and kind of work done or materials furnished, and the time when done or furnished and the amount of the claim. *Welch v. Humphrey,* 200 Md. 410, 90 A. 2d 686. The purpose of this notice is to inform the property owner of the nature and amount of the claim intended to be fixed as a lien upon his property, in order that he may be able to protect himself in his future dealings with the contractor. The requirement imposes no hardship upon the claimant, and it gives the owner a means of protection which the Legislature intended for his benefit.

Defendants urged that complainant delivered the great bulk of the materials before May 9, 1951, and that in view of the assignment made by the James Company on that day, the real purpose of the deliveries made by complainant after that date was to extend the time for giving notice of intention to claim a lien. Defendants claimed that the materials furnished prior to May 9, 1951, and those delivered thereafter were not furnished under the same contract.

We concede, of course, that where materials are furnished for separate and distinct purposes, or under different contracts, even though they are intended to be used by the contractor or builder in executing the same contract with the owner, the right to a lien must date from the time of furnishing the different parcels of material, and not from the last item in the account. Where, however, all of the materials are furnished for the same general purpose, such as the construction of a building, even though they are delivered at different times, yet if the various undertakings are so connected together as to show that the parties contemplated that all of the deliveries form one entire matter for settlement, the entire account should be treated as a single contract. *Hensel v. Johnson,* 94 Md. 729, 51 A. 575; *Brunt v. Farinholt-Meredith Co.,* 121 Md. 126, 131, 88 A. 42.

It is also firmly established that where the time allowed for filing a mechanic's lien has begun to run, the claimant cannot thereafter extend the time within which the lien may be filed by doing or furnishing small additional items and thereby fixing a date from which the period must begin to run anew, especially where the doing or furnishing of such items is merely colorable and the real intention is to save or restore a right which is already imperiled or lost, or where the additional work is done or additional materials are furnished without the knowledge, request or consent of the owner. But where a claimant, after a contract is substantially completed, does additional work or furnishes additional material which is necessary for the proper performance

of his contract, and which is done in good faith at the request of the owner or for the purpose of fully completing the contract, and not merely as a gratuity or act of friendly accommodation, the period for filing the lien will run from the doing of such work or the furnishing of such materials, irrespective of the value thereof. *Harrison v. Stouffer*, 193 Md. 46, 65 A. 2d 895. This rule is likewise applicable to the notice of intention to claim a lien.

The deliveries which complainant made after May 9, 1951, were made under the same contract under which the deliveries prior to May 9, 1951, were made. The materials were similar, they were all furnished to the same subcontractor, and they were all installed in the same buildings.

Moreover, it cannot be held that the materials which were delivered after May 9, 1951, were trivial items furnished solely for the purpose of restoring a right which had already been lost. The account against District Heights Apartments, Sections D-E, Inc., shows that after May 9, 1951, complainant delivered to it supplies of pipes, flanges, ells, plugs, thermometers and other materials valued at more than $1,200. The account against District Heights Apartments, Sections F-G, Inc., shows that after May 9, 1951, it delivered materials to it valued at more than $1,000. The last delivery to the first defendant was on July 24, 1951. The last delivery to the second defendant was on August 8, 1951. Complainant served the required notice on each defendant on September 11, 1951, in compliance with the statute.

*Decrees affirmed, with costs.*