EDWARD M. GREENWAY *vs.* JOSEPH J. TURNER and FRANCIS TURNER.

A material-man furnished materials to a contractor at short intervals between November 1846, and the 20th of September 1847, after which none were furnished until the 7th of February 1848, (long after the time fixed by the contract for the completion of the house,) and gave notice of his lien two days before the end of sixty days from that day. HELD :

That if the contract between the owner and the builder was, in point of fact, at an end at the time the materials were last furnished, the material-man could gain no lien by virtue of the delivery on that day.

Under the mechanics' lien laws the party furnishing materials to the builder or contractor, is bound to see that he is dealing with the person who is actually the builder or contractor at the time the materials are furnished

The owner is not required to give public notice through the papers of the termination of his contract with the builder, nor personal notice to each material-man or sub-contractor, in order to protect himself against the acts of the builder.

The liability of the owner is created not by act of the party, but by law, and must rest solely upon the terms of the law, one of which is that there must be an active subsisting contract between the builder and the owner, before the latter can be made responsible for materials furnished to the former.

Greenway *vs.* Turner.

A prayer composed of several parts connected by a conjunctive copulative presents but one entire proposition, and therefore is not liable to the objection of embracing several legal propositions, any one of which being wrong the whole should be rejected.

If there be a *bona fide sale and delivery* of the materials for the building, it is immaterial whether they are *used* or not.

Where a prayer by the defendant *assumes a fact* necessary to the support of the plaintiff's case, the latter cannot object to it on the ground that it takes from the jury the finding of such fact.

APPEAL from Baltimore county court.

A *scire facias* was issued by the appellees on the 12th of August 1848, under the act of 1838, ch. 205, upon a lien claimed by them upon a house and lot owned by the appellant, for materials furnished by them to one Wall, the contractor for the construction of said house.   The claim for lien, amounting to $491.47, was filed on the 25th of March 1848.   The bill of particulars shows, that lime and other materials were furnished by the plaintiffs to Wall, at short intervals from the 3rd of November 1846 to the 20th of September 1847, from which time no charge is made until the 7th of February 1848, when a charge for lime, &c., to the amount of $1.86, closes the bill.   The appellant appeared and plead *non assumpsit,* and it was agreed, that under the issue upon this plea all errors in pleading should be waived, and each party might give in evidence every matter as if specially pleaded.

*Exception. Holloway,* the plaintiff's clerk, proved, in substance, that the articles charged in the account were furnished by them to Wall for the defendant's house; that the articles charged on the 7th of February 1848, were ordered on that day by one Conolly, who signed the receipt therefor; that no lime was furnished from the 20th of September 1847, till the 7th of February 1848; that during the autumn of 1847, plaintiffs pressed Wall for another account they had against him, which has not yet been paid; that the portico to the house was not finished until after February 1848; that during the autumn of 1847 they pressed Wall for their bill, who gave them an order on defendant, payable on demand, and when witness called for the payment thereof defendant declined to

38     v.4

pay or accept it, stating that it was contrary to his rule to accept orders on account of the house, but also stated there was a large amount due Wall on his contract, and for extra work, and he would secure the plaintiffs out of the money coming to Wall.

*Conolly* proved that Wall employed him to do the plastering for the house, and directed him to get the lime therefor from the plaintiffs; that in February 1848, he had completed his work, except the portico, for which he ordered lime on the 7th of that month; that plaintiffs did not ask him to order the lime on that day, but he had before that time asked them about a lien on defendant's house; that the lime so ordered was deposited on the pavement by the plaintiffs' negro drayman, and when this was being done defendant raised a window in the house and ordered the drayman to take it away, but the latter drove off leaving the lime behind; that witness did not finish the portico, as defendant would not let him do so; it was finished by a man employed by defendant.

The plaintiffs then proved that they served two notices of lien upon the defendant, one dated the 13th of March 1848, signed by their attorney, the other two days before the sixty days from the 7th of February 1848 had expired, signed by themselves.

The defendant then offered the contract in writing between Wall and himself for the building of the house, dated the 21st of October 1846. Wall was to do the entire work, furnish all the materials, for $6700, part to be paid in real estate, and $4900 in cash, as the building progressed, Greenway reserving the right to withhold a sufficient sum, to secure him against any loss that might occur should Wall die, or from any cause be unable to complete the agreement; the house to be completed by the 1st of August 1847.

He also offered his account showing the payments made by him to Wall and others, on account of this house amounting to $10,414.55, and proved the receipts of Wall for various sums between the 23rd of Nov· 1846, and the 9th of Aug. 1847, amounting to $4310; and that from that time until the

16th of Oct. he advanced him sums to the amount of $505 as loans to be returned when demanded, for which Wall gave his receipts in that form. He further proved that on the 5th of Febuary 1848, two attachments were issued out of Baltimore county court against Wall as an absconding debtor, which were laid as per schedule, and condemnations *nisi* entered thereon, but nothing was realized as the property taken was mortgaged for more than its full value. And that on the 7th of February 1848, Wall applied for the benefit of the insolvent laws and subsequently obtained a discharge thereunder.

*Hinkley*, defendant's clerk, proved, in substance, that when Turner called for the payment of his claim against Wall, defendant was particularly guarded to make no promise to him, saying that he was in advance to Wall who had treated him badly, and defendant and Turner both spoke very severely of Wall.

*Baily* proved that he was employed by defendant in the fall of 1847, to complete part of the carpenter's work on the house; that on the day the lime was left as stated by Conolly, witness met Conolly who spoke of the transaction and said defendant had given him a written order to get mortar from Mr. Didier, and he had got himself into a scrape with defendant.

*Sharer* proved that he was at work on the house in February when Conolly and the drayman came up with the lime. Defendant raised a window and cried out that it was sent to defraud him and get a lien on his house, and called to drayman to take it away. Drayman got on his dray, whipped up his horse and drove away, looking back and laughing. Witness heard defendant tell Conolly some time before this to get whatever lime and mortar he wanted from Didier.

*Starr* who was a plasterer, proved that at this time (February 1848,) it was too cold to plaster.

To rebut this last evidence the plaintiffs proved by *Green*, that on the 8th of February 1848, he sold lime to several persons for plastering.

The defendant then asked the two instructions which are set out in the opinion of this court, which the court below (LE GRAND, A. J.,) refused.   To this refusal the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Frederick W. Brune* for the appellant.

The evidence shows that Wall had ceased to be the architect or builder, on the 7th of February 1848, when the last articles were furnished; the appellant in the autumn of 1847, took the direction and control of the completion of his house into his own hands, without objection from Wall, and therefore, with his consent, and the latter was an absconding debtor on the 5th of February 1848.   By the original act of 1838, ch. 205, a lien could not be obtained by the party furnishing materials to the builder, unless he gave notice within thirty days, but the supplement of 1845, ch. 176, sec. 1, takes the time of furnishing as the starting point, and requires the notice to be given within sixty days.   One question in the case is, whether this time runs from the furnishing of the *last articles*, or applies to the whole?   It is a stringent law, and by its language and meaning imposes on the material-man, the duty of seeing that he has made a contract with one who is actually the builder at the time.   Unless this be so the law affords no opportunity for an owner to discharge a builder, however unfaithful or incompetent he may be, for after he is actually discharged he can still make the owner liable for his contracts. If, therefore, Wall was but the contractor at the time the articles were furnished, the appellees cannot recover.   The law is a statutory privilege, in derogation of the common law and must be strictly construed, and its provisions strictly pursued by a party seeking the benefit of it.   3 *Watts,* 143.   1 *Watts and Seargt.,* 406.   1 *Smedes and Mar.,* 628.   The defendant's first prayer should, therefore, have been granted.

There is evidence in the record from which a rational mind might have deduced, the fact of collusion between the appellees and Conolly in furnishing the materials on the 7th of February 1848, and if so, the defendant's second prayer should have been granted. 2 *H. & G.*, 189, *Davis vs. Barney.* 2 *G. & J.*, 403, *Cole vs. Hebb.* 7 *G. & J.*, 27. In cases of fraud the slighest circumstances are permitted to go to the jury. 5 *G. & J.*, 30. 2 *Gill*, 4. 1 *Md. Rep.*, 474, *Waters vs. Dashiell.*

*T. Yates Walsh* and *David Stewart* for the appellees.

The evidence in the record shows that Wall was the builder of the house, and that the lime was furnished to the building by the appellees; and further, that the appellant promised to pay them their claim out of the money he owed Wall on the contract. There is no evidence that Wall agreed to a recision of the contract with the appellant, and even if it were rescinded the appellees could not be affected thereby in the absence of *notice* to them of such recision. Though there are no decisions directly upon this point, yet there are analogous cases as to partnerships, where special notice of dissolution is always required; and why not here where the party was contractor for the entire building? As *illustrative* authorities on this point, see 2 *H. & J.*, 186. 12 *Pick.*, 133. 7 *Pet.*, 113. The appellant is estopped from denying that Wall was his contractor unless he did something to give the public notice of the dissolution of the contract. There is no evidence the appellees knew of Wall's insolvency. The time begins to run *after* the furnishing of the materials. *Okisko Company vs. Matthews*, 3 *Md. Rep.*, 168. The provisions of the act of 1845, would be of no avail if notice was to be given within sixty days after the delivery of *each article.* These lien laws are *remedial* in their character, and are to be *liberally* construed. Again, the prayer *assumes* that materials were furnished by the appellees, without leaving this fact to be found by the jury, and it is for this reason defective.

As to the *second* instruction, it is *one* proposition made up

of three several ingredients. 1st. It leaves it to the jury to find collusion between the plaintiffs and Conolly, in ordering the lime on the 7th of February, *for the purpose of reviving their lien.* 2nd. That the lime was left on the street as stated by Sharer and Conolly; and 3rd, that it was not *used* in the construction of the house. The proposition being an *entire* one, if it be wrong in any of the positions assumed, it was rightly rejected. 12 *G. & J.*, 242. Now there is *no evidence* of the imputed collusion—the action of the *colored drayman* in delivering the lime cannot be looked upon as such evidence. Whether the lime was *used* in the building or not is in no wise material, provided it was *sold* and *delivered* for the purpose of the building. 2 *Penn. Rep.*, 104, 275. 2 *Seargt. and Rawle*, 170.

MASON, J., delivered the opinion of this court.

This is a proceeding under the mechanics' lien law of 1838, chap. 205, and its supplements.

The defendant contracted with a man named Wall for the building of a house in Baltimore, and Wall obtained a portion of the materials used in the house from the Messrs. Turner, the plaintiffs. At different times and at short intervals from the month of November 1846, up to the 20th September 1847, materials were furnished as alleged by the plaintiffs, and which are not denied by the defendant. No materials were again furnished after the 20th September until the 7th of February 1848, a period of nearly four months. At the last mentioned date, through the direction of a man named Conolly, who professed to act as Wall's agent, certain other materials, amounting to $1.86, were obtained from the plaintiffs to be used as was alleged in the building, but which were not in fact used, though delivered at the house; the defendant objecting to their delivery, and insisting upon their being taken away, denying at the same time Wall's right further to bind him. By the contract between Wall and the defendant, the house was to be completed by the 1st of August 1847, but in fact it was not completed for more than a year

afterwards. There is also testimony in the record going to show that in October 1847, the defendant had taken the management of the building into his own hands, and had virtually terminated his contract with Wall. On the 5th of February 1848, two attachments were issued against Wall as an absconding debtor, upon which judgments of condemnation were entered, and on the 7th of the same month he applied for the benefit of the insolvent laws, having for a long time previous been embarrassed in his circumstances.

This appeal comes before us upon exceptions taken by the defendant below, to the refusal of Baltimore county court to grant two instructions prayed for by him, upon the aforegoing testimony. We are now required to review the decision of the court below, and if necessary to correct it.

In the first prayer the court are asked to instruct the jury, "that the plaintiffs are not entitled to recover if the jury find that Jacob Wall was not the contractor, architect or builder of the building described in the proceedings, at the time when the materials charged by the plaintiffs on the 7th February 1848, were charged or furnished."

If in point of fact the contract between Wall and the defendant was at an end, at the time the materials were last furnished, no lien or claim against the defendant or his property could result to the plaintiffs by virtue of the delivery on that day. Nor is any formal notice necessary to be given to those furnishing materials to the contractor, of the termination of the contract, provided *bona fide*, and *in fact* it is at an end. The party furnishing the materials has the duty imposed upon him by the act of Assembly, which was designed mainly, if not exclusively, for his benefit, of seeing that he is dealing with the person who is actually the builder or contractor at the time the materials are furnished. If the materials were furnished by virtue of an express authority or direction from the owner of the building, there might be some reason for requiring some notice equally express revoking the authority or direction. But where the authority to charge and bind the owner, alone results from the contract between

him and the builder, that authority must be taken as having ceased as soon as the contract ceases. If it were otherwise there would be no protection for the owners of buildings against the acts of improvident and fraudulent contractors. It is hardly to be presumed that the lien law imposes upon the owner of a building the necessity of giving public notice through the papers, of the termination of his contract with the builder, in order to protect him against the acts of the latter: nor can it be contended that individual or personal notice to each material-man, or sub-contractor, is required, because in many cases it would be impossible for the owner to know who they were.

This law provides, that unless within sixty days after the materials have been furnished a notice be served upon the owner, setting forth the claim for materials, &c., no lien for the same will accrue, and in case such notice is served, he may retain from the cost of such building, from the contractor, the amount which may be due the party giving such notice. After the lapse of sixty days from the termination of the contract, and the last materials had been furnished, the owner might well suppose himself free to settle with and pay off the contractor, and thus to surrender the indemnity which he might otherwise have retained in his hands against any claim for materials. But if the termination of the contract is to constitute no protection for the owner against such claims as the one set up in this record, it would be impossible for him to know when his liability would cease.

This is not like the case of an ordinary agency, where the liability arises from an express or an implied authority from the party sought to be charged. Independent of the lien laws no responsibility could attach to the defendant for the materials in question, from the simple circumstances alone that they were purchased by his contractor and were used in his building. It is a liability created exclusively by act of Assembly, and not by the act of the party, and must rest solely upon the terms of the law, one of which is that there must be an active subsisting contract between the builder and

the owner, before the latter can be made responsible for materials furnished to the former.

For the reasons expressed, we think the court erred in not granting the first instruction asked for by the defendant.

We are also of the opinion that the second instruction prayed for was improperly rejected. In that prayer the court was asked to say, "that if the jury find that the witness Conolly, in ordering the articles charged upon the 7th February 1848, colluded with the plaintiffs for the purpose of reviving their lien, which they had lost for the articles previously furnished by them, and that the articles so ordered by him were left on the street by the colored drayman, under the circumstances mentioned in the testimony of the witnesses Sharer and Conolly, and were never used in the construction of the dwelling-house mentioned in the proceedings, then the plaintiffs are not entitled to recover."

It was contended on the part of the plaintiffs, that the above prayer was erroneous, because it embraced several legal propositions, that if one of those propositions be wrong the whole prayer should be rejected, and that the question was improperly submitted to the jury to find whether the lime was used in the building or not, as it was no wise important whether it was used or not, provided it was sold and delivered for the building by the plaintiffs.

We do not regard this prayer as obnoxious to this objection. The copulative used, being in the conjunctive and not in the disjunctive, makes the prayer present but one entire proposition, though composed of several parts. It not only affirms that the materials were collusively furnished, but that they were so furnished against the protestations of the defendant, and that they were not used by him. It might well have been a question whether he would not have adopted this act of the plaintiffs, although the result of collusion with the witness, and thus made himself responsible, if he had not objected to the delivery of the articles, as he did, or if he had afterwards used them, or permitted them to be used, in his building. In order to protect himself against the alleged collusive conduct,

39    v.4

(if such it was in fact,) it was necessary that he should not have used the lime on his building. The prayer does not put a case, as it seems to be treated by the counsel for the plaintiffs, of a *bona fide* delivery of materials for the building; for in such a case it is conceded, that it might have been immaterial whether they were used or not.

The court are of opinion further, that there was sufficient testimony in the record to warrant the submission of the question to the jury, whether there was collusion between the plaintiffs and the witness Conolly. They however express no opinion upon the *weight* of that testimony, but leave that to be determined by the jury, whose peculiar province it is to decide upon the facts in the case.

The objection urged in argument by the plaintiffs' counsel that the last prayer was erroneous, because it *assumed the fact* that materials had been furnished before the 7th February, is not tenable—it is, at least, not an objection which the plaintiffs would be permitted to make, because if it does assume a fact, it is one necessary to the support of their own case.

*Judgment reversed and procedendo awarded.*