(Decided 22nd June, 1875.)

William  Ortwine  *vs.*  David  W.  Caskey  and John  R. D. Thomas.

*An indispensable Party to a Bill to enforce a Mechanics' lien—Evidence—Ineffectual claim for a Lien.*

C. built a row of houses consisting of twelve.   The bricks for their erection were furnished by O.   There was no special contract for furnishing the bricks for the houses, or for the pavements after the houses were finished; but the bricks were ordered and furnished during the progress of the work,

Ortwine *vs.* Caskey & Thomas.

as they were wanted, and were charged in a running account against C., commencing in April, 1872, and the four last items in which are charges for paving brick furnished in the months of April and May, 1873. Three of the houses were sold to T. in December, 1872, and were finished in the Fall of 1872, except some work about the fire-places, and the laying of the pavements in the yards. There were no bricks furnished for these three houses on C's account after December, 1872, but there were some paving bricks furnished by O. on C's account on the 14th of April and 20th of May, 1873, to be used about some of the other houses in the row. O filed his claim for lien on the 7th of October, 1873. On a bill filed by O. against C. to enforce his lien upon the three houses purchased by T., it was HELD:

1st. That T. was an indispensable party and was properly admitted by the Court as such upon his own application.

2nd. That the *onus* of proving that any portion of the material furnished was delivered within the six months immediately preceding the filing of the lien claim, is upon the claimant.

3rd. That the charges in the claimant's books are no evidence of either the quantity or the time of delivery.

4th. That after the three houses had been sold and conveyed to T., and the conveyance recorded, the claimant could no longer charge as against those houses the bricks subsequently furnished on C's account to be used in and about the other houses in the row.

This case distinguished from the case of *Miller and Kauffman vs. Barroll*, 14 *Md.*, 173.

APPEAL from the Circuit Court for Baltimore County, sitting in Equity.

This appeal was taken from an order of the Court below, (YELLOTT, J.,) dismissing the complainant's bill. The case is stated in the opinion of the Court.

The cause was argued before STEWART, BRENT, GRASON and ALVEY, J.

*Wm. S. Keech,* for the appellant.

*D. G. McIntosh* and *A. W. Machen,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

The bill in this case was filed to enforce a mechanics' lien, under Article 61 of the Code; and by section 25 of that Article, where the lien is sought to be enforced by bill in equity, the same proceedings are directed to be had as are used by the Courts of Equity to enforce other liens.

The bill was filed against Caskey alone, the original owner, and for whom the houses were built, omitting altogether the purchasers who had become owners of the property before the lien claim was placed upon record, on the 7th of October, 1873

Without deciding whether it was or not essential to make all the owners of the twelve houses, for which material was furnished, and which are described in the lien claim, parties to the proceedings to enforce the lien, we can have no doubt that Thomas, the purchaser of the three houses upon which the lien is sought to be fixed, to the exclusion or exemption of the other nine, was not only a proper but an indispensable party. The Court, therefore, was perfectly right in admitting him as a party defendant on his own application.

But, whether Thomas could be affected by the evidence taken under the interlocutory decree against Caskey, before he, Thomas, was admitted as a party to the cause, having failed to except to such evidence before the argument in the Court below, (*Cross vs. Cohen*, 3 *Gill*, 271,) or whether the interlocutory decree was properly passed as against Caskey, the original defendant, are questions that we deem to be immaterial, and therefore do not decide; for upon the whole evidence, including that taken under the interlocutory decree, we are entirely satisfied that the decree appealed from is correct, and must therefore be affirmed.

It appears that Caskey built a row of houses, consisting of twelve, on the south-west side of Madison Avenue extended, commencing them in the spring and finishing them late in the fall of 1872, or early in the winter of

1873 ; and the bricks for the erection of these buildings were furnished by the claimant, the present appellant. There was no special contract for furnishing the bricks for the houses, or for the pavements after the houses were finished ; but the bricks were ordered and furnished during the progress of the work, as they were wanted, and were charged in a running account against Caskey, commencing in April, 1872, and the four last items in which are charges for paving brick furnished in the months of April and May, 1873.

As to the three houses sold to Thomas, they were finished in the fall of 1872, except some work about the fire-places, and the laying of the pavements in the yards ; and there were no bricks furnished for these houses on Caskey's account after December, 1872.

Thomas entered into a contract with Caskey for the purchase of the three houses here involved, on the 17th of December, 1872, and by that agreement the houses were to be completed and ready for occupancy, and so to be delivered to Thomas, free and clear of all charges, taxes and incumbrances of every kind, except a certain mortgage and a ground-rent, on the first of January, 1873. Thomas took possession before the day mentioned, and on 3rd of January, 1873, he obtained from Caskey a deed for the houses, which was placed on record on the 5th of February, 1873.

As we have said, no bricks were furnished by the claimant on Caskey's account, for the houses purchased by Thomas, after the latter took possession in December, 1872 ; but there were some paving bricks furnished on Caskey's account after that time, to be used about some of the other houses in the row ; and Thomas purchased on his own account, and paid for, some twenty-five hundred paving bricks in April, 1873, which were used about the houses purchased by him. The two last items in the claimant's account against Caskey, are for paving bricks fur-

nished on the 14th of April, and the 20th of May, 1873, and these two items are relied on as saving the lien, and bringing the entire account within the limit prescribed by law for filing the claim ; *Code, Art.* 61, *sec.* 23 ; the lien claim not having been filed until the 7th of October, 1873.

The *onus* of proving that any portion of the material furnished, was delivered within the six months immediately preceding the filing of the lien claim is upon the claimant ; and, in this case, the proof is far from being clear that the bricks charged for in the two last items, were delivered at the times specified in the account. The charges in the claimant's books are no evidence of either the quantity or the time of delivery ; and the claimant himself does not profess to have personal knowledge upon the subject, nor do the other witnesses examined by him prove with any certainty either the quantities or dates of delivery. And as to the acknowledgments of Caskey, spoken of by the witnesses, they had reference to the state of the account prior to the time of the purchase by Thomas.

But, apart from this defect of proof, we think the lien ineffectual as against the houses sold to Thomas.

This is altogether unlike the case of *Miller & Kauffman vs. Barroll*, 14 *Md.*, 173.

There it was held, that the sale of a house and lot, whilst the house was in process of erection and unfinished, could not alter or affect the rights of the mechanic, under our mechanics' lien law, who was then engaged in doing, and continued afterwards to do work, *under a previous employment* by the vendor when owner; and that where work was done or materials furnished, *continuously under one contract or employment*, made by the vendor of the house, whilst owner thereof, the claimant could recover for the whole of the work done or materials furnished, without giving the purchaser notice. In the case now before us, there was no special contract for furnishing all the

Ortwine *vs.* Caskey & Thomas.

bricks to be used in and about the erection of the buildings, but the bricks being furnished only as they were ordered, and those furnished on each order, constituting a distinct charge in the account kept by the claimant against Caskey, it is clear, we think, that after the three houses now sought to be affected by the lien had been sold and conveyed to Thomas, and the conveyance recorded, the claimant could no longer charge, as against those houses, the brick subsequently furnished on Caskey's account to be used in and about the other houses in the row; and hence the time limited within which the lien was required to be filed could not be eked out and extended as to Thomas's houses, by the bricks furnished for the other houses on the 14th of April, and the 20th of May, 1873,—more than three months after Thomas had acquired title to, and taken possession of, his three houses.

In the case of *Yearsley vs. Flanigan*, 22 *Penn. St.*, 489, involving the construction of a mechanics' lien law very similar in its terms to our own, it was held, that where a contract was made with a bricklayer to do all the brick and stone work about the erection of a building, including the laying of the pavement, *the contract being entire*, a mechanics' lien could be filed within six months from the completion of the work, including the pavement; but it was also held, that though the contract for constructing the building and laying the pavement be *entire*, if the building was finished, and the contract treated by the parties as complete, and a considerable time was allowed to elapse before the pavement was laid, *and other rights intervened*, the claim filed more than six months from the date of the last work *upon the building*, was too late.

Here, the work upon the building, was done, so far as Caskey was concerned, before the 1st of January, 1873, and the rights of Thomas, under the contract of purchase, date from that time; and it was more than nine months

after the acquisition of title by Thomas, that the lien was filed for record. And before the purchase by Thomas, the claimant and Caskey seem to have treated the account as closed, for in December, 1872, the entire account was apportioned among the several houses, and the aggregate amount apportioned to nine of the houses was paid, and soon thereafter, the residue of the account was closed by Caskey's note on time. That note, however, was not paid, and it has been charged in the account as due on the 9th of March, 1873.

We think the lien claim was filed too late to affect the houses sold to Thomas.

*Decree affirmed.*

(Decided 22nd June, 1875.)