JOSEPH F. MORELAND ET AL. *v.* WILLIAM H. MEADE.

[No. 94, October Term, 1931.]

*Decided March 2nd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, PARKE, and SLOAN, JJ.

*J. Fletcher H. Gorsuch, Jr.,* with whom was *Robert E. Carney* on the brief, for the appellants.

*Philander B. Briscoe,* with whom were *Ernst S. Romoser* and *Briscoe & Jones* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the 16th day of December, 1929, Joseph F. Moreland and Mamie M. Moreland, his wife, as tenants by the entireties, owned a suburban development, known as Biltmore Farms, in Baltimore County, which was laid off in lots, and through which ran roads and avenues. The development of the property was under the management and direction of the husband, Joseph F. Moreland. At this time, one F. S.Neal

was the agent for the owners in the sale of the lots. On the date mentioned, he effected a sale of lots Nos. 62, 63, and 64 to one William F. Meade, at and for the sum of $900. Upon the payment of a deposit thereon, the following receipt was given therefor:

"Baltimore, Md., Dec. 16, 1929.

"Received from W. F. Meade one 00/100 dollars, the same being deposited on Lots 62-63-64 at Biltmore Farms, the total price being $900. Terms, $1.00 down, $——— monthly. The above deposit not to hold the lots after three days, unless so stated in this receipt and countersigned by Joseph F. Moreland, and after that date, all moneys are forfeited. This receipt, if given on the land, holds lots above, unless previously sold at the office, in which case the deposit will be refunded. No representations or agreements outside of those set forth in this receipt shall be binding.

"Per F. S. Neal, Agent."

This contract was not countersigned by Joseph F. Moreland in accordance with the terms and provisions of the receipt. On the 3rd day of March, 1930, another contract or agreement relative to the sale of said property unto William F. Meade was made, in which one Edward J. Kuehn represented the owner of said land. This contract was as follows:

"Joseph F. Moreland.

"5402 Harford Ave., Baltimore, Md.

"March 3, 1930.

"No. of lots three.

"Total amount, $900.00.

"No verbal agreements or written alterations recognized.

"I hereby agree to subscribe to Building Lots Nos. 62-63-64, Biltmore Farms, Baltimore County, Maryland, for which I agree to pay $300.00 per lot. Herewith $10.00 and the balance in sums of $10.00 every month hereafter until full amount of $900.00 is paid. It is understood that deed for these lots, sub-

ject to restrictions on the back thereof, shall be issued to me when I have made all payments as agreed above. If there is any default in payments for subscriptions on lots it is agreed that all moneys paid are at the option of Joseph F. Moreland to be retained as liquidated damages and not as penalty. All water and sewerage charges to be assumed by purchaser from date hereof. All money to bear interest at the rate of 6 per cent. per annum after one year from the above date.

"Signature Wm. F. Meade,

"Address R. F. D. Towson,

"Joseph F. Moreland,

"Per Edward J. Kuehn.

"Witness and Agent, Edward J. Kuehn."

To or upon said contract was attached a memorandum showing the imposition of certain restrictions, but, for the purpose of this opinion, we need only insert the fourth restriction, which is as follows:

"4. The right is reserved to cut the grass until the lots are improved. Written permission must be obtained to construct fences or buildings, or to cut or remove any trees before complete payment has been made."

At the conclusion of the restriction mentioned is found the following provision:

"It is further understood and agreed between the principals to this contract that no representations or agreements made by any agent or any other persons except those named in this contract shall be binding upon the parties to this contract."

At the time of the purchase, the property was unimproved. On the 10th day of February, 1930, the purchaser, William F. Meade, started to improve the same by the erection of a garage and bungalow thereon. Before doing so, he called at the office of Joseph F. Moreland to obtain from him permission to make such improvements, as he was required to do under the contract. Meade was told by the agent, Kuehn,

that Moreland was in Florida.; and he found Kuehn in charge of Moreland's office and apparently in charge of his affairs. Meade explained the purpose or object of his visit to the office, and he was told by Kuehn that "it was all right," to go ahead with the improvements.

William F. Meade, it seems, was practically without funds or credit, and had only paid $10 upon the purchase money. Although he had no money, he was able to procure the labor of his father, William H. Meade, a carpenter and the appellee in this case, in the erection of the buildings thereon. But William F. Meade, without money or credit, was unable to obtain lumber and other material with which to erect the buildings. This, it would seem, was largely due to the fact that the legal title to the land upon which the buildings were to be erected was not in him, but in Moreland and his wife. Meade, finding himself unable to get lumber under these conditions, went to see Kuehn, Moreland's agent, and stated to him the difficulties with which he was confronted in obtaining lumber and material, whereupon Kuehn gave him the following letter:

"March 8, 1930.

"To Whom It May Concern:

"I have given Mr. W. F. Meade permission to construct a dwelling on Lots 62, 63 and 64 at Biltmore Farms, provided he has lived up to the restrictions in contract.

"Jos. F. Moreland,
"Per Edward J. Kuehn."

This letter enabled Meade to get the required lumber with which to erect the buildings, and, with the labor of his father, the appellee, he was able to complete the buildings.

When Moreland returned and learned of the improvements being made by W. F. Meade, he, if not expressly, by implication approved of what had been done through his agent, Kuehn, in his absence, and in addition thereto gave W. F. Meade information and advice as to the financing of the erection of the buildings on the lot purchased from him.

The appellee, who was employed by his son to do the work upon the buildings, was not paid for his services. As a result thereof, he filed a mechanic's lien therefor. On the 29th day of December, 1930, the money owing him for his services rendered in the erection of the buildings not having been paid, he filed a bill against Joseph F. Moreland and Mamie M. Moreland, his wife, for enforcement of the mechanic's lien. After answer filed thereto, the court heard evidence on the issues joined, and on July 20th, 1931, the learned chancellor decreed that, unless the amount of the mechanic's lien was paid within the time therein mentioned, the property was to be sold by a trustee therein named, and the proceeds thereof brought into court for distribution under its direction. From that decree this appeal was taken.

The learned chancellor, Judge Offutt, filed in this case a written opinion giving clear and forceful reasons for the conclusion reached by him. These reasons are adopted by this court, and are as follows:

"The controlling question in this case is whether a mechanic's lien for work and labor on a building on land sold under an unrecorded installment contract of sale shall be preferred to the lien of the vendor for the unpaid purchase money due him for the property, where there was no contract between such vendor and the vendee, the mechanic's lienor, or any other person, for the improvement, and where it was not made at his instance or request, and where such vendor did not contract for such work and labor, but knew of and consented to the improvement, and where the vendee was in default under the sales contract when the improvement was made.

"The two sales contracts were in my opinion integral parts of a single transaction, the sale of the lots, and I am satisfied from the testimony that the agents Neal and Kuehn were authorized to execute them. For whatever question there might be as to that is answered by their subsequent ratification by Moreland, acting for himself and his wife. And, while the contracts are incomplete and inartificial, they are nevertheless quite sufficient to indicate that the clear inten-

tion of the parties was that the lots be sold to William F. Meade. So that it may be assumed that, as between the parties, after December 3rd, 1929, the vendee, Meade, was the equitable owner of the property, and the vendors held the legal title as security for the payment of the unpaid purchase price. *Brantly's Digest, Vendor and Purchaser,* subtitle 'Vendor's Lien.'

"Reverting to the question first stated, Code, art. 63, sec. 1, provides: 'Every building erected and every building repaired, rebuilt or improved to the extent of one-fourth its value in Baltimore City and in any of the counties shall be subject to a lien for the payment of all debts contracted for work done for or about the same, and in the counties every such building shall also be subject to a lien for the payment of all debts contracted for materials furnished for or about the same.' And section 15 provides: 'The lien hereby given shall be preferred to all mortgages, judgments, liens and encumbrances which attach upon the said buildings or the grounds covered thereby subsequently to the commencement thereof; and all the mortgages and liens other than liens which have attached thereto prior to the commencement of the said building and which by the laws of this State are required to be recorded shall be postponed to said lien, unless recorded prior to the commencement of said building.'

"The plaintiff's contention is that, under those sections, he is entitled to his lien because the work described in detail in his lien claim was done on the buildings, erected on the land described in the claim, under a contract with his son, the vendee, and that it is immaterial whether the Morelands contracted with the plaintiff therefor, or even whether they contracted with any one else to have the buildings erected. In other words, he contends that his son was the owner of the property, that the work was done under a contract with him while he owned it, and that therefore a lien for the work must under section 15 be preferred to any claim which the vendor may have either to the land or for the purchase money.

"It may be assumed that at the time the work on the

buildings was commenced the vendee was nominally the owner of the land on which they were to be erected (*Brewer v. Herbert,* 30 Md. 307; *Hall v. Jones,* 21 Md. 439; *Carr v. Hobbs,* 11 Md. 285), and that as such owner he could contract for the construction of the buildings, and that work done under that contract could properly be the subject of a mechanic's lien claim which would bind at least his interest, whatever it was, in the property. But it does not necessarily follow that it would also bind the interest of the vendors therein, if the lien claimant knew that the legal title to the property was in the vendors, and that the vendee had a merely nominal interest therein, and if the vendors had neither contracted for the construction of the buildings nor were privy thereto.

"Section 15, while somewhat obscurely phrased, apparently deals only with the priority to be given in the event of a conflict between a mechanic's lien claim and a judgment or incumbrance attaching to a building subsequent to the 'commencement thereof,' and a mortgage or lien required by law to be recorded but not in fact recorded prior to the commencement of the building. Over any such liens the mechanic's lien is preferred, but the section does not apparently affect the status of liens which have attached prior to the commencement of the building and which are not required by law to be recorded, but the priorities between such lienors and subsequent mechanic's lienors are left to be decided according to the relative equities of the two classes of claimants. The case of *Weber v. Weatherby,* 34 Md. 656, upon which the plaintiff relied, is not at all in conflict with that construction. In that case Weber sold land to Ranstead, upon which there was an unfinished building which by the contract of sale he agreed to complete. Ranstead ordered certain fixtures needed to complete the house in accordance with the contract of sale, and with the knowledge and acquiescence of Weber they were installed. Ranstead subsequently abandoned the contract, and the materialmen who had furnished the fixtures claimed a lien. Weber resisted it, but the court sustained the lien on the ground that the materials

were to be considered as furnished upon the authority of Weber exercised through Ranstead as his agent, and upon the facts of the case treated Weber as the owner of the property. But there is nothing in that case to justify the contention that, if the material had not been furnished to or upon the authority of Weber, and if the building in which they were placed was commenced after the contract of sale, the mechanic's lien for such materials would have affected Weber's interest in the land.

"In *Greenway v. Turner,* 4 Md. 296, the effect of the decision is that, under the statute, the lien claim must rest in part at least upon some contract either between the claimant and the owner, or between the owner and the builder, and that construction also finds support in *Mills v. Matthews,* 7 Md. 324. In *Miller v. Barroll,* 14 Md. 173, it was held that the sale of property pending the construction of improvements thereon under a contract prior to the sale would not defeat a mechanic's lien for work and materials furnished for the improvements after as well as before the sale, but that decision rested upon the finding that the work and materials were furnished under one continuous contract with the owner made while he was owner. In *Blake v. Pitcher,* 46 Md. 453, there was a contract for the erection of a building between the owner and a builder, and the right to a lien for material furnished for the building was placed upon the 'privity and consent' of the owner. In *Sodini v. Winter,* 32 Md. 134, the court, in stating that to support a mechanic's lien it is not necessary to prove that credit was given to the owner, nevertheless assumes a contract between the owner and the contractor to whom the credit was given. In *McLaughlin v. Reinhart,* 54 Md. 71, while stating that the lien rests not upon any contract between the parties but upon the statute, the court nevertheless says : 'It pre-supposes a contract express or implied, for labor or material to be done or furnished, which existing, the law affixes a lien to secure the payment of the mechanic or material man, for what is done and furnished. The right to compensation must exist or there can be no lien. *Sodini v. Winter,* 32 Md.

130.' And what was said there was elaborated in *Gunther v. Bennett,* 72 Md. 384, 19 A. 1048, where the court said: 'While it is true the lien is created by statute, and that the remedy here pursued is also statutory, yet in the language of this court in the case of *McLaughlin v. Reinhart,* 54 Md. 76, the mechanics' lien law itself "pre-supposes a contract express or implied, for labor or material to be done or furnished, which existing, the law affixes a lien to secure the payment of the mechanic or materialman, for what is done and furnished. The right to compensation must exist or there can be no lien." But it is clear the right to compensation rests upon a contract either express or implied.' And while the decisions of the courts of other states on the question are of little assistance because of the variance in the statutes with which they deal, nevertheless the general trend of such decisions does support the proposition that a vendee and equitable owner of property cannot, in the absence of statutory authority, bind the vendor and holder of the paper title without his consent to responsibility for the improvements, nor can any contract which such vendee may make, unless authorized in some way by the vendor, be made the basis of a mechanic's lien against him. 58 *A. L. R.* 912.

"While so far as I know there is no direct decision in this state on the point, and while cases in other jurisdictions, many of which are collected in 23 *L. R. A.* (N. S.) 601, and 58 *A. L. R.* 912, are of little aid because they deal with statutes differing substantially in their phraseology from ours, nevertheless, upon the principles recognized in the cases cited, as well as upon principles of natural justice, the phrase 'contracted for' as used in section 1 of the statute must mean 'contracted for' by or in furtherance of some purpose of the person to be bound.

"It has been repeatedly held and must be taken as settled that the right to the lien rests, not upon a contract, but upon the statute. And that must be so, for, if there were no statute, there could be no lien. What the statute does is to convert a claim into a lien which but for the statute would not be a lien. But the claim itself must rest finally upon

some contract, for, as pointed out in *Greenway v. Turner, supra*: 'Independent of the lien laws no responsibility could attach to the defendant for the materials in question, from the simple circumstances alone that they were purchased by his contractor and were used in his building. It is a liability created exclusively by Act of Assembly, and not by the act of the party, and must rest solely upon the terms of the law, one of which is that there must be an active subsisting contract between the builder and the owner, before the latter can be made responsible for materials furnished to the former.'

"But that principle would afford little protection to a vendor if his vendee in possession of his property under an installment contract of sale could by his contract, for his (the vendee's) sole benefit, subject the vendor's interest in the property to a mechanics' lien for improvements which he (the vendee) placed on the property. And it would seem to follow necessarily that, before the vendor's interest can be affected by any contract which the vendee may make, the contract must be authorized either expressly or by implication by the vendor.

"But while that is so, it is also true that the vendor may by his own conduct estop himself from denying that he authorized the improvement or, stated in another way, he may so act that his conduct will justify a rational inference that he authorized the contracts which the vendee made for the improvement of his property, and that I think is this case.

"The Morelands knew at the time the buildings were begun that the vendee had defaulted in his contract of sale of December 16th, 1929, and that by its terms he had no further interest in the property, for the knowledge of Kuehn, their agent, as to that, was their knowledge. He was left in charge of their office in their absence, and was permitted to collect payments on lots sold by them, and apparently to represent them in the management of the property. He gave the vendee permission to erect the buildings, and his action was subsequently ratified by the letter of March 8th, 1930, signed by Kuehn as Moreland's agent, and Kuehn's author-

ity to so sign was not questioned. Subsequently Moreland in person saw that the buildings were being constructed, but raised no question as to the vendee's right to erect them.

"On March 3rd, 1930, all defaults under the contract of December 16th, 1929, were waived, and a more formal contract executed under which the December payment of one dollar was consolidated with a further payment of nine dollars to satisfy the first installment due under the later contract. No further payments were made under that contract, and after April 3rd, 1930, it was in default too. Work on buildings was continued, however, until the following September and, indeed, nearly all the work charged for in the lien claim was done after April 3rd, and most of it after Moreland must have had personal knowledge that it was being done.

"So that Moreland, who represented his wife also throughout the transaction, not only permitted the work to be begun at the time when he could at his option have rescinded the contract of sale, but he also permitted it to be continued and completed long after the vendee was in default under the final contract of March 3rd, and after it must have been apparent to him that the vendee would be unable to complete his purchase of the property. Under such circumstances, the Morelands must be treated as the real substantial owners of the property, for while the vendee by virtue of the contracts of sale was the nominal equitable owner, there never was a time, except the period between March 3rd, 1930, and April 3rd, 1930, when the Morelands, the real and substantial owners, could not have demanded the extinguishment of the vendee's interest in the property. To allow the Morelands to stand by under such circumstances and without warning or protest permit workmen to expend their labor in enhancing the value of their property, and repudiate liability to them therefor when they (the Morelands) must have known that the vendee was wholly irresponsible, and that the only possible security to which the workmen could look for compensation was the property itself, would be manifestly unjust and counter to the spirit and purpose of the statute. For it may well be

inferred from such conduct that the vendors, knowing that the improvements would cost more than the value of the land, and that it was improbable that the vendee, who was in default and unable to finance his purchase, would ever be able to complete it, authorized and approved the contracts for the improvements which probably would benefit them only. *Sodini v. Winter, supra.* Moreland must have known that the work was being done by the plaintiff either in the belief that the vendee had a good title to the property, which Moreland knew he did not have, or in the belief that in erecting the building he acted as Moreland's agent. And when Moreland, having that knowledge, acquiesced in and permitted the work to go on, he cannot now be heard to say that he did not induce the belief that he was privy to the contract under which it was done. The contracts of sale were not recorded, were executory, and it does not appear that the plaintiff knew their terms, but not only were their terms known to defendants, but they also knew the extent to which the vendee had complied with them. If under such circumstances they were willing to have their property made more valuable by the labor of others, they cannot complain if the property is made to pay for that labor."

The contention of the appellant that the decree directing the sale of the property was wrongfully passed inasmuch as the vendee, Wm. F. Meade, the owner of the equitable interest therein, was not made a party to the proceeding instituted for the enforcement of the mechanics' liens, is in our opinion untenable. The vendee had full knowledge of the pendency of the proceeding, was a witness in the case, and had he wished could have been made a party thereto. Under these circumstances he is bound by the decision as effectually as if he was a party to the proceeding. *Parsons v. Urie,* 104 Md. 247, 64 A. 927; *Abramson v. Horner,* 115 Md. 246, 80 A. 907; *Williams v. Snebly,* 92 Md. 9, 48 A. 43; *Thompson v. Winterbottom,* 154 Md. 585, 141 A. 343.

The decree in our opinion was properly passed, and will be affirmed.

*Decree affirmed, with costs.*