CLARK CERTIFIED CONCRETE CO., INC., Use
of Meyerhoff *v.* LINDBERG et al.

[No. 211, September Term, 1957.]

(Two Appeals In One Record)

*Decided May 19, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and GRAY, JR., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*August Levene* and *Edward L. Putzel,* for appellants.

*LeRoy E. Gerding,* with whom were *Julius A. Victor, Jr.,* and *Walter S. Calwell* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from decrees of an equity court dismissing bills of complaint filed by the appellants for the sale of houses owned by Walter W. Lindberg and wife, and Rosalie Hokemeyer, respectively known as 1243 and 1245 Neighbors Avenue, to enforce mechanics' liens against each property in the total amount of $5,798.93. The two cases were heard together and present the same questions for decision.

It was stipulated that Brook Homes, Inc., acquired a tract of land for development purposes by various conveyances between January 26 and August 13, 1951, consisting of 92 lots out of a total of 119 shown on a recorded plat. It proceeded to erect houses on these lots in groups of six or seven. Construction began in January, 1951, and continued until a re-

ceiver was appointed for Brook Homes, Inc., on August 28, 1953, at which time some of the houses were still uncompleted. The houses with which we are now concerned were substantially completed by June 16, 1952, and were used as sample houses by the developer. They were sold by the developer on June 16, 1953. The lien claims were filed on August 5, 1953, and were for ready mixed concrete supplied to the developer between August 1, 1952 and April 8, 1953. None of this concrete went into the houses in question.

Mr. William M. Duncan, Jr., a salesman for Clark Certified Concrete Company, Inc. (Clark), testified that he discussed with Mr. Schoppert, who was in charge of buying materials for Brook Homes, Inc. (Brook), the matter of supplying concrete for the new development. This conversation took place before any of the work began. Schoppert asked if Clark would be able to supply concrete for the job and Duncan said it would. There was no signed contract to supply all of the concrete necessary for the development, but it was understood that Schoppert would "give us at least a day's notice, and he would tell us how many yards for that particular day, and we would deliver it." The price was to be "the prevailing price at the time of delivery * * * on that particular day he would pay what the yardage price would be." Pursuant to the understanding, concrete was regularly delivered as ordered, in each month and on 134 different days between February 28, 1951, and April 8, 1953, a total of 1883 cubic yards of concrete at a total price of $20,720.38, as shown by invoices produced. The account was paid up to and including the concrete delivered on July 29, 1952, the total amount paid being $14,921.95.

The appellees contend that the liens were not filed in time. The Mechanics' Lien Law, Code (1957), Art. 63, sec. 1, provides that "Every building erected * * * shall be subject to a lien for the payment of all debts contracted * * * for materials furnished for or about the same * * *." Sec. 23 provides that "Every such debt shall be a lien until after the expiration of six months after the work has been finished or the materials furnished, although no claim has been filed therefor, but no longer, unless a claim shall be filed at or

before the expiration of that period." We have held that the clause as to "work" refers to a labor claim. A material claim must be filed within six months from the time the materials are furnished. *Harrison v. Stouffer*, 193 Md. 46, 50; *Heath v. Tyler*, 44 Md. 312, 318; *Trustees of German Lutheran Church v. Heise*, 44 Md. 453, 475. In the instant case the claims were filed within six months from the date of the last delivery, April 8, 1953. It seems clear that an express antecedent contract is not a prerequisite. Where there are continuous deliveries at a "going price", pursuant to an undertaking to supply materials as needed, a lien may be filed within six months from the delivery of the last item, provided such delivery is made in good faith and not as a subterfuge to toll the statute. *T. Dan Kolker, Inc. v. Shure*, 209 Md. 290; *District Hgts. Apts. v. Noland Co.*, 202 Md. 43; *Humphrey v. Harrison Bros.* (4th Cir.), 196 F. 2d 630.

The appellees contend that because it was shown that none of the materials for which the liens are claimed went into the houses against which the liens were filed, the liens were unenforceable. It is generally held that delivery of material to the site of building operations is enough to establish a lien, even though none of the materials are actually incorporated into the building, but the cases are not in accord as to whether such proof is conclusive, or merely establishes a rebuttable presumption. See note in 39 *A. L. R.* 2d 394. That the fact of incorporation is immaterial was flatly stated in *Greenway v. Turner*, 4 Md. 296 and *Watts v. Whittington*, 48 Md. 353, although probably the statement was unnecessary for the decisions in those cases. In *Wilson v. Wilson*, 51 Md. 159, while the Court found there was a failure to prove the use of materials in one of the four houses sought to be charged, the holding was that the lien failed because of a release by the claimant, which had the effect of releasing all of the houses from the lien. To the same effect, see *Nickel v. Blanch*, 67 Md. 456, and *Brick Co. v. Dunkerly*, 85 Md. 199. In *Maryland Brick Co. v. Spilman*, 76 Md. 337, it was held that where there was an entire contract to deliver bricks for the construction of 47 houses, it was not incumbent upon the claimant to show that the bricks were actually used in the

construction of the particular buildings against which the lien was filed. The statement in the *Greenway* and *Watts* cases, *supra,* was quoted with approval. The *Wilson* and *Nickel* cases were distinguished as dealing with the effect of a release. But it is not entirely clear from this decision whether the Court meant that the owner would be precluded from showing that none of the materials went into the particular buildings. The Court observed that it would be "unreasonable to require the person who furnishes materials * * * to ascertain how much of the material is placed in each house * * *". This same statement was repeated in *Fulton v. Parlett,* 104 Md. 62, 64, where it was also said that there was no duty to apportion the claim where more than one structure is built. In *Caltrider v. Isberg,* 148 Md. 657, it was held by a divided court that where the owner paid the builder for all the materials going into one of the two houses under construction, this did not amount to an apportionment or prevent the enforcement of the lien against both houses.

In *Humphrey v. Harrison Bros., supra* (p. 633), the facts were that a lien claim was based upon an agreement to furnish plumbing and heating supplies for 135 houses, at a flat rate per house. It was shown that payment had been made for substantially all of the materials installed in the 29 houses against which the lien was filed. Judge Soper, for the Court, applying the Maryland law, sustained the lien, and said that it was "not essential to the validity of the lien claim that the furnisher show in what houses specific materials were used, or indeed that the materials were actually used upon the project if they were purchased for and delivered to the site of the work." The statement was quoted with approval in *District Hgts. Apts v. Noland Co., supra* (p. 48). We also stated (p. 49) that when "there is no testimony tending to raise a suspicion that the materials were not used in the building, it is reasonable to conclude that the materials did in fact go into the building, especially where it is shown that some of the materials have been used in the construction", but this was in connection with a claim that the materials were not delivered at all, but diverted to another site. We conclude that the liens in the instant cases were valid even

though it was shown that none of the materials for which the liens are claimed went into the particular houses against which the liens were filed, where it was shown that the materials were used in the construction of other houses in the development, at a time when the particular houses were owned by the developer.

The appellees contend that the fact that the particular houses were sold before the liens were filed renders the liens unenforceable. The Chancellor remarked that the construction of houses in a development may extend over a period of years and that "the purchaser of a dwelling today might find that a company furnishing materials five years after the conveyance had claimed a lien on his property for materials furnished in some remote section of the development in which his property is located", and that this would "inevitably result in hardship and injustice". It may well be that a lien claim, based on materials delivered to the site after particular houses have been conveyed away, will not lie against those houses. In *Ortwine v. Caskey,* 43 Md. 134, it was held that where some of the houses were finished and sold, and materials were thereafter delivered for use in and about the unfinished houses, the later deliveries did not save the lien. Cf. *Heath v. Tyler, supra.* It was also held that the claim failed because before the sale the claimant and builder treated the account as closed by apportioning the entire account among the several houses, and the claimant accepted payment of the amount so apportioned to the houses against which the lien was subsequently filed. In the instant case the materials for which the lien is claimed were delivered to the site before the conveyances, although the lien was not filed until after the conveyances. The factual situation falls into the pattern of the *Caltrider* case, *supra,* rather than the *Ortwine* case.

It seems clear under our decisions that the mere fact of conveyance does not divest the statutory lien for materials delivered prior thereto. See *Miller v. Barroll,* 14 Md. 173 (cited in the *Ortwine* case) ; *Caltrider v. Isberg, supra;* cf. *Moreland v. Meade,* 162 Md. 95, 103. See also *Phillips* on *Mechanics' Liens* (3d ed.), sec. 227 and 36 *Am. Jur.,* sec.

190, p. 127. Of course, the proceeding is *in rem, Gaybis v. Palm,* 201 Md. 78, 83, and the statute declares that the lien attaches from the time of the delivery of the materials, subject to the claim being filed within six months from the date of the last delivery in a running account, at least in the case of contract or undertaking that is indivisible and made in good faith. It would seem that a purchaser is charged with constructive notice of the lien. Code (1957) Art. 63, sec. 32, calls for construction of the law as remedial in nature, and we have frequently stated that it should be construed liberally in favor of a claimant. *Johnson v. Metcalfe,* 209 Md. 537, 543. If the law ought to be changed so as to protect purchasers from claims for deliveries to other houses in a development prior to the conveyance, it should be done by the legislature and not by judicial fiat.

> *Decrees reversed and case remanded, costs to be paid by the appellees.*

HORNEY, J., filed the following dissenting opinion.

The majority opinion of this Court, reversing the decree of the chancellor, is based on the theory that a mechanics' lien is valid against houses in a development for concrete delivered to the site of the housing development despite a conclusive showing that none of the concrete for which the liens were claimed was used in the particular houses against which the liens are sought to be enforced.

The chancellor denied the decree sought by Clark Certified Concrete Co., Inc., (Clark *or* the materialman) for the sale, under the Mechanics' Lien Law, of the two houses known as 1243 and 1245 Neighbors Avenue, in Philadelphia Heights, formerly used as sample houses, but now owned by Walter W. Lindberg, et ux., and Rosalie Hokemeyer, respectively. In 1951, Brook Homes, Inc., (Brook *or* the developer) acquired ninety-two lots in the Philadelphia Heights section of Baltimore County which it proceeded to develop by building houses. Construction began in January of 1951 and continued until a receiver was appointed for Brook in August of 1953. In

June of 1953 the houses referred to were sold by Brook to the present owners. Pursuant to an informal understanding, Clark had delivered all the concrete needed by Brook in the development. On one hundred and thirty-four different days in the period between February of 1951 and April of 1953, over eighteen hundred cubic yards of concrete were sold and delivered on open account to the development site. The concrete delivered through July of 1952 had been paid for, but the balance due for concrete delivered between August of 1952 and April of 1953 was not paid. The mechanics' lien was filed in August of 1953.

It was stipulated that the houses against which the liens were filed "were substantially complete and had been so for approximately one year prior to * * * [July of 1953], and had been used as sample houses by the builder." The president of Brook testified that the houses were finished in 1951, and that the concrete used in the alley and sidewalks for those houses had been poured "sometime before July of 1952." There is no dispute, therefore, that the concrete used in these two houses was included in the concrete which had been paid for. There is also no dispute that the concrete which has not been paid for and on which the lien claimed was based was delivered after August of 1952, that is, after all of the concrete work for or about the two houses involved had been completed.

I agree with the majority that the law in Maryland does not require a mechanics' lien claimant to prove in which of several houses in a development project his materials were used. All that he is required to show is that the materials were delivered to the site of construction. In fact, the materialman does not even have to show that "the materials were actually used on the project, if they were purchased for and delivered to the site of the work." *District Heights Apts. v. Noland Co.,* 202 Md. 43, 95 A. 2d 90 (1953). But, I am convinced that all this rule does—even though it is far-reaching in its scope and effect—is to raise a *presumption* in favor of the materialman to the effect that his materials were actually used on the project. It does not, however, imply that the owner of the houses is precluded from rebutting

such use if he can. Of course, failure to use the materials for the purpose delivered, or the waste or destruction thereof, or diversion to another site, would not rebut the presumption.

In *Maryland Brick Co. v. Spilman,* 76 Md. 337, 25 A. 297 (1892), a materialman, having furnished the bricks for a housing development, filed its lien on all the houses constructed. Subsequently the lien on some of the houses was released. Thereafter, when the brick company sought to enforce its lien against the remaining houses, the owner claimed that the materialman had not proved that its bricks were used in the remaining houses. This Court, quite properly, found in favor of the brick company, stating at p. 343:

> "From the very nature of this contract, it could, in no event, become important, how many bricks went into one building or whether more went into one than another. Nor was it requisite, to entitle the appellant to maintain its lien, that it should establish the fact that the bricks were actually used in the construction of the buildings or not, provided it was shown that under its contract with Spilman, it had delivered the bricks to be used in the erection of said buildings."

However, this statement only means that the attempt of the owner to shift the burden of proof to the materialman was improper under the circumstances in that case. That this interpretation is correct is demonstrated by the additional statement in the opinion, at p. 344:

> "Suppose any such burden was imposed upon the appellant in furnishing the bricks for the buildings in question, how could it have discharged the obligation? It only contracted to furnish and deliver the bricks for the forty-seven buildings, and then its power to fulfill the contract was at an end. It had no right to direct how the bricks should be used, and it could have no possible means of ascertaining or of showing into what building or buildings the bricks had gone, or whether they had been used at all in

any of the buildings. It fulfilled its contract when it delivered the bricks. If such a burden, under the contract, rested anywhere, it was with the appellee, Spilman, who had the means at his command of showing the exact truth in respect to the use to which the bricks had been put, but it was wholly immaterial to have required any such proof of the appellant, * * *."

But what is more important, the Court also said, at p. 343:

"The facts, however, of each particular case must determine the propriety of the application of the principles of law, which ought to govern in such case, and in neither of the cases just quoted [*Wilson v. Wilson,* 51 Md. 159, and *Nickel v. Blanch,* 67 Md. 456] are the facts the same or similar to those to be found in the record of this appeal."

The *Wilson* and *Nickel* cases dealt principally with the effect of a release. It is also significant, I think, that Judge Soper, in the course of his opinion in *Humphrey v. Harrison Bros., infra,* saw fit to quote verbatim the citation last referred to from the *Spilman* case.

In the instant case the owners have shown "the exact truth in respect to the use" to which the concrete was put. None of it went into the houses involved for they had been completed more than a year before the concrete was delivered for which the lien was claimed. And it is not disputed that the concrete which was used for or about the houses in question had been paid for before the lien was filed.

In *Humphrey v. Harrison Bros.,* 196 F. 2d 630 (4th Cir. 1952), which had been removed to the District Court from the State court for trial, the materialman had supplied plumbing materials for a large development, but had filed its lien against only part of the houses therein. The owner contended that none of the materials specified in the lien, except a very small amount, were installed in the houses against which the lien was asserted, but had been installed in other houses in the development against which the claim had not been filed,

and also claimed that he had paid the contractor for all the materials supplied and work done in the unencumbered houses. In applying the Maryland law, Judge Soper said: "The more important question * * * is whether the lien is invalid because the materials on which it is based were not installed in the houses against which it is asserted, but in other houses in the project," and in the course of his opinion he subsequently stated:

> "[I]t is not essential to the validity of the lien claim that the furnisher show in what houses specific materials were used, or indeed that the materials were actually used upon the project if they were purchased for and delivered to the site of the work." (Emphasis added.)

This statement refers only to the minimal evidentiary burden that is placed on the materialman. The construction of the sentence shows that Judge Soper was not confronted with the fact that the owner had conclusively rebutted the presumption in the materialman's favor—that some of the materials were used in every house—arising from the delivery of the materials to the development site. The import of the first part of the italicized sentence—"it is not essential * * * that the furnisher show"—is that it is not incumbent on the materialman to show that his materials were used in any particular house. In other words, the case dealt with the kind of evidence that need not be produced by the materialman; it did not deal with the kind of evidence that might be produced by the owner. In the Humphrey case there were no facts, as there are in the instant case, which conclusively rebut the use of any of the materials on which the lien was predicated in the houses against which the lien was filed. While it is true that the owner contended that none of the materials—"except a very small amount"—were used in the houses against which the lien was filed, and that all of the materials furnished and work done in those houses had been paid for, there is no indication in the opinion that he produced sufficient factual proof to convince the Circuit Court of Appeals that he had rebutted the presumption in favor of

the materialman. Moreover, since he quoted it (see p. 585), Judge Soper was well aware of the statement made in the *Spilman* case, *supra,* with regard to *the facts which ought to govern each particular case.*

All that the *Spilman* and *Humphrey* cases, both *supra,* really decide is that the burden of proof cannot be placed upon the materialman. There are other Maryland cases which hold to the same effect, but in no case heretofore decided by this Court has the owner produced evidence, as in the present case, where it was *proved* that none of the materials for which the lien was claimed had gone into the houses involved because such houses had been completed more than a year before the materials were delivered for which the lien was claimed, *and* where it was *admitted* that the materials which were used for or about the houses in question had been paid for before the lien was filed.

While the Florida statute is somewhat different from the law in this State, the Supreme Court of Florida, in *Tremont Co. v. Paasche,* 81 So. 2d 489 (Fla. 1955), rejected a claim strikingly similar to that made by the materialman in the instant case with the following remark:

> "The lien holders have cross-appealed, it being their contention that they are entitled to liens against all the premises including the original or model cottage, all of which was completed and paid for before the commencement of the construction of the remaining nine cabins, so that the lienors extended no credit on the strength or basis of the model cabin, and we likewise see no error in the decree of the trial court excluding or excepting this portion of the lot from the effect of the liens."

In *District Heights Apts. v. Noland Co., supra,* the issue was simply whether the holders of a mechanics' lien had produced sufficient evidence to prove *delivery* of the materials. We found that delivery had been shown, and that the claimants did not have to show that the particular materials were used in particular buildings. But the fact that a claimant does not have to produce proof of specific use in no way

implies that the owner may not rebut such use. We implied this approach to the problem of *rebutting a presumption* when we said in the *Noland* case, at p. 49:

> "When materials are purchased for use in a proposed building, and they are furnished in pursuance of the contract, and *there is no testimony tending to raise a suspicion that the materials were not used in the building,* it is reasonable to conclude that the materials did in fact go into the building, especially where it is shown that some of the materials have been used in the construction." (Emphasis added.)

There is more than a suspicion in the present case for it is conceded that none of the materials for which the lien was filed were used in the houses in question.

I believe that in a case such as this, where it is unreasonable to require the materialman to produce evidence which is peculiarly within the knowledge of the owner of the development or of a home owner, as the case may be, and where the lien claimant must prove only the delivery of the materials to the development site, the burden of proof rule should be so extended as to permit the owner to produce, if he can, clear and convincing relevant evidence negativing the presumption that the materials so delivered were used in every house in the development. Query: What, for instance, should be the finding if there is clear and convincing proof that a claim for bricks delivered to a development site was filed against a house built entirely of stone?

I further believe that it is unfair, as well as unnecessary, under the circumstances in this case, to extend the previous rulings of this Court to what is likely to be an irremediable injury to the present owners of the houses in question. In my opinion, the applicable law does not need to be amended in order to protect an owner under the circumstances here present. All that is needed is for us to so interpret the existing law as to give to it the reasonable meaning we have so often *implied* we would bestow if and when a set of circumstances were shown to exist which warranted a finding that the presumption in favor of a materialman had in fact

been rebutted. And it does not seem to me that it should make any difference whether the house involved is still owned by the developer or has been sold to another owner.

For the reasons stated, I am convinced that under the circumstances in this case, the owners have *conclusively rebutted* the presumption in favor of the materialman, and that the bills of complaint should be affirmed instead of reversed.